## THE FRANK BIRD TRANSFER COMPANY ET AL. *v*. KRUG.

[No. 4,234. Filed November 20, 1902. Rehearing denied March 17, 1903.]

CARRIERS.—*Transfer Company.*—*Negligence of Driver.*—Plaintiff employed a transfer company to convey her to a station, directing the driver to stop at a place which was not necessarily dangerous. The driver stopped so near a curve in a street car track that the vehicle in which plaintiff was riding was overturned by being struck by the rear of a street car as it rounded the curve, and plaintiff was injured. *Held*, that plaintiff was not guilty of contributory negligence. *pp. 604–607*.

SAME.—*Concurrent Negligence of Street Car and Transfer Companies.*—*Instruction.*—Where a passenger of a transfer company was injured in a collision between the cab in which she was riding and a street car, and brought an action charging concurrent negligence of the transfer and street car companies, it was proper for the court to instruct the jury that, as to the street car company, a greater degree of care was required of plaintiff, since she, as a passenger of the transfer company, had the right to rely on the driver to exercise proper care for her safety. *pp. 607, 608*.

PLEADING.—*Complaint.*—*Contributory Negligence.*—Under §359a Burns 1901, it is not necessary, in an action for personal injuries caused by defendant's negligence, that the complaint aver plaintiff's freedom from contributory negligence. *pp. 609, 610*.

APPEAL.—*Transfer from Supreme to Appellate Court.*—*Constitutional Question.*—*Presumption.*—Where a cause, in which a constitutional question is raised, is appealed to the Supreme Court, and by that court transferred to the Appellate Court, it will be presumed that the former court disposed of the question adversely to appellant's claim. *p. 610*.

SAME.—*Negligence of Cab Driver.*—*Collision With Street Car.*—*Imputed Negligence.*—Where plaintiff employed a transfer company to convey her in a cab to a particular place, and while being so conveyed was injured by the concurrent negligence of the cab driver and a street car company, the negligence of the driver is not imputed to plaintiff so as to prevent a recovery in an action against the transfer and street car companies as joint tort feasors. *p. 611*.

Frank Bird Transfer Co. *v.* Krug.

TRIAL.—*Interrogatories.— Untrue Answers.— Remedy.—*The fact that answers to certain interrogatories are untrue, as shown by the evidence, is no reason for returning the interrogatories to the jury for more specific answers; such question is properly presented in a motion for a new trial. *p. 613.*

SAME.—*Interrogatories.—Untrue Answers.—Harmless Error.—*Where any answers to special interrogatories which the evidence would have warranted would not necessarily have controlled the general verdict, the returning by the jury of untrue answers is harmless error. *pp. 613, 614.*

From Marion Circuit Court; *H. C. Allen,* Judge.

Action by Mary A. Krug against the Frank Bird Transfer Company and another. From a judgment for plaintiff, defendants appeal. *Affirmed.*

*F. Winter, W. H. Latta* and *H. N. Spaan,* for appellants. *Wilborn Wilson,* for appellee.

COMSTOCK, J.—Action for damages for personal injuries. The complaint, which is in two paragraphs, alleges that while appellee was riding as a passenger in a carriage of appellant transfer company, she was injured by a collision between the carriage and a car of the street railway company. Both companies are charged with negligence. The paragraphs do not materially differ. More particularly stated, the averments are, in substance, that in February, 1900, appellee engaged the appellant the Frank Bird Transfer Company, which was a common carrier of passengers for hire, to carry her from her residence in the city of Indianapolis, to the Union Station in said city. Just east of the west baggage room of the Union Station, Louisiana street intersects or joins South Illinois street, and the street railroad tracks of the appellant the Indianapolis Street Railway Company are laid upon said Louisiana street, and continue north on South Illinois street, forming a curve at the intersection of said streets, so that the rear end of a street car while rounding said curve will swing out for a considerable distance beyond the street railway tracks. The appellant the Frank Bird Transfer

Company had carried appellee in a closed cab or coupé to the Union Station, and had stopped said cab or coupé near the west baggage room, on the south side of Louisiana street and said street railroad tracks, and at the curve at the intersection of Louisiana street and South Illinois street. While the coupé in which appellee was sitting as such passenger was standing there, a car owned and operated by the appellant the Indianapolis Street Railway Company approached from the west, and despite the fact that the motorman running and operating said car could distinctly see the cab or coupé in which appellee was sitting for a distance of at least 300 feet, he so carelessly and negligently ran and operated said car that in rounding said curve the rear end of said car was swung and driven with great force and violence into and against said coupé, completely overturning the same and causing appellee lasting and permanent injuries. The action was tried by a jury, and a verdict and judgment resulted in her favor against both defendants in the sum of $2,500. With the verdict the jury returned answers to interrogatories.

Appellant Frank Bird Transfer Company relies for reversal upon the action of the court in overruling its motion for judgment notwithstanding the verdict, and overruling its motion for a new trial. Said appellant contends that its motion for judgment should have been sustained, because it is shown by answers to interrogatories that appellee directed the driver of the coupé to drive to the place he did, and that she knew that it was a place of danger.

The court's attention is called to the following interrogatories and answers, to wit: "(8) Did she, after getting into said vehicle, direct said driver to drive her to the baggage room on the south side of Louisiana street, west of said Union Station? A. Yes. (9) Did the said driver drive the said vehicle, with the plaintiff as a passenger in it, to the said baggage room? A. Yes. (10) Did the said driver stop the said vehicle, with the plaintiff as a

passenger in it, in the south side of Louisiana street a short distance east of the east end of the said baggage room? A. Yes." "(20) Was there a glass in each side of said vehicle, so that passengers therein could readily see out? A. Yes." "(23) From the point where said vehicle was standing was there a clear view of the said south street railway track in Louisiana street westward for a distance of at least 300 feet? A. Yes." "(25) How far could said car as it approached from the west have been seen by a person looking from the point where said vehicle was standing? A. 350 feet. (26) What was the plaintiff's age? A. 28 years. (27) Did she, at the time said vehicle was struck by the car, have good eyesight? A. Yes. (28) What time in the day was it when the said accident happened? A. About eleven o'clock a. m. (29) Did the said vehicle pass from the north to the south across said two tracks in Louisiana street, at the intersection of Illinois street, just before it stopped at the place where it was struck by the street car? A. Yes. (30) How far did the said tracks extend westwardly along said Louisiana street from. the point where said vehicle crossed them? A. 350 feet. (31) Were the said tracks in plain view of the plaintiff in the said vehicle as she crossed said tracks if she had looked in the direction of said tracks? A. Yes." "(1) Was the defendant the Frank Bird Transfer Company a common carrier of passengers for hire on the 24th day of February, 1900? A. Yes. (2) If so, did the said defendant, as such common carrier, engage and undertake to carry the plaintiff as a passenger in one of its closed cabs or coupés on the said 24th day of February, 1900? A. Yes. (3) To what point did the said plaintiff direct the said defendant to drive her? A. West baggage room of the Union Railway Station." "(19) Could the cab or coupé in which the plaintiff was being carried have been stopped at any other place as convenient to the said baggage room? A. No."

From these interrogatories and answers appellant concludes that appellee was guilty of contributory negligence, because she instructed the driver to drive the coupé into a place that she had reason to know at the time was dangerous, and that the driver was not guilty of negligence because he drove where he was told to, and to the most convenient place.   It is shown by answers to other interrogatories that said transfer company drove appellee to the west baggage room of the Union Station and stopped between the rails of the street railway and the curb, that there was no other vehicle besides the one in which appellee was a passenger standing between the street railway tracks and the curb on the south side of Louisiana street between the east end of the baggage room and the curb on the east side of Illinois street west of the Union Station.   It is further shown that the distance from the south rail of the tracks to the curb, where the collision occurred, was ten feet and two inches, and that the distance from one rear hub to the other rear hub of the coupé was five feet and eleven inches. The place to which appellant was directed to drive was not necessarily dangerous.   The facts found by the jury show that there was nothing to prevent the driver from taking a safe position.

Appellant claims that the answers to interrogatories fifty and fifty-one can not be reconciled with the general verdict, and are inconsistent with the theory of the complaint; that they show that the door of the vehicle when it stopped was directly north of the first gate in the fence extending east from the baggage room, and the vehicle was about ten feet east of the east end of the baggage room; that the cab was not struck at the curve, but was considerably west of it when struck.   The theory of the complaint is that the cab was struck by the car at the curve of the tracks, or at the junction of Louisiana and Illinois streets, and that the rear end of the street car projected beyond the track as the car swung around said curve.   It is found in answer to inter-

rogatory fifty-two that when the rear end of the street car passed said gate, the southwest corner of the rear platform extended south of the south rail of the track one foot and nine inches. By the answer to the fifty-third interrogatory it is shown that at the point where the rear platform of the said car, as it passed along the track, extended over the south track, the southwest corner of the platform extended two feet eleven inches over the south rail. This claim of conflict is not sustained.

In discussing the motion for a new trial said appellant claims, first, that the third instruction given by the court of its own motion is erroneous. The instruction is as follows: "It was the duty of the plaintiff before crossing the track of the street railway company, and after she had crossed the same, to use ordinary care to avoid collision with any car that might approach upon said track, and if she failed to do so, and such, approximately, contributed to her injury, she can not recover as against the street railway company in this action. And the plaintiff was not relieved from such a duty by the fact, if you find it to be a fact, that she was in a cab or carriage of the Frank Bird Transfer Company, while, as between the plaintiff and the Frank Bird Transfer Company, she had a right to rely upon the agent of that company to exercise proper care for her safety. As between the plaintiff and the said street railway company, she was required to use ordinary care and attention to prevent injury, and to make all reasonable use of her senses of sight and hearing for that purpose; and if by the exercise of such care she could have avoided the injury complained of, she would not be entitled to recover a verdict against the said defendant street railway company."

The objection made to the instruction is that it makes an invidious distinction between appellee's duties toward the transfer company and the street railway company; that appellee was just as much bound to use her senses of sight and hearing in the one case as in the other. The position

of appellant is not well taken. A common carrier is bound to the highest degree of care. A passenger has the right to presume that the carrier will exercise this degree of care toward securing his safety. As between appellee and the street railway company this presumption could not be indulged, for the latter was only required to exercise ordinary care under the circumstances.

In the ninth instruction the jury were told that the duty the two defendants owed to appellee was not the same. "As a passenger of the transfer company she had a right to expect of it the highest degree of care and prudence consistent with the conduct of its business, and as to it she was only required to sit passively in the cab to be in the exercise of ordinary care." It is insisted that this does not correctly state the rule, and that appellee was bound to use all her senses to prevent injury to herself. We do not construe this, as claimed by appellant, as telling the jury that the transfer company was the insurer of the safety of the passenger, but, rather, as stating that it was not the duty of appellee to look and listen for unknown danger.

In the seventh instruction the jury were, in effect, told that appellee could not recover, if, by lack of reasonable care she had proximately contributed to her injury. In the thirteenth instruction the jury were told that "if the cab driver used all the care that human foresight and judgment could direct and provide in placing said cab where he did, when his passenger got out of the said cab, and used the highest degree of care while there for the safety of the plaintiff, then the defendant the Frank Bird Transfer Company is not liable in this action. Considering these instructions in connection with those complained of, it does not seem probable that the jury was misled.

The eighth reason for a new trial was that the answer to interrogatory fifty, viz.—that when the vehicle stopped, the door was directly north of the first gate in the fence extending east from the baggage room—was not sustained by

sufficient evidence, and was contrary to the evidence. It is claimed that this answer was material on the question of the liability of appellants. John Furgeson testified upon cross-examination that the horse was headed east of the baggage room, about eight or ten feet from, and a little east of, the gate; that the door of the carriage was just about the gate. G. B. Ronan testified that, on a rough estimate, "it was from eighteen to twenty feet from the horse's nose to the rear wheel of the cab." John Wood, driver of the cab, testified that he drove his horse right up against the foot tunnel under the Union Station. The exhibit, made a part of the evidence, showing the location of the tunnel referred to, the car track, baggage room, and gates in the fence extending east from the baggage room, show that the mouth of the tunnel is about eleven feet east of the first gate. The evidence sustains the answers to said interrogatories.

It is also claimed that the answer to interrogatory fifty-one is not sustained by the evidence. It finds that the driver of the vehicle stopped the vehicle on the south side of the track about ten feet east of the east end of the baggage room. There is evidence to support this finding. While there is some difference in the evidence as to the exact distance from the baggage room to the cab when it was struck by the car, the evidence is uncontradicted to the effect that it was struck by the rear end of the car at the junction of the two streets, before the car had completed the turn, and that the collision was due to the fact that it was, by appellant transfer company, placed negligently and carelessly near the track.

It is contended by the appellant railway company that the complaint is bad because it does not contain an averment that appellee was free from contributory negligence. The cause of action accrued and suit was commenced subsequent to the taking effect of the act of 1899 (Acts 1899,

p. 58). The statute reads: "That hereafter, in all actions
for damages brought on account of the alleged negligence
of any person, copartnership or corporation for causing
personal injuries, or death of any person, it shall not be
necessary for the plaintiff in such action to allege or prove
the want of contributory negligence on the part of the
plaintiff, or on the part of the person for whose injury or
death the action may be brought. Contributory negligence,
on the part of the plaintiff, or such other person, shall be a
matter of defense, and such defense may be proved under
the answer of general denial, provided, that this act shall
not affect pending litigation." §359a Burns 1901. Under
the statute such averment, even if wanting, is unnecessary.

It is averred, however, that the act in question is un-
constitutional upon various grounds enumerated in appel-
lants' brief. The Supreme Court have held otherwise.
*Southern Ind. R. Co.* v. *Peyton,* 157 Ind. 690, and cases
cited. Besides, in transferring this case to this court, which
is without jurisdiction to determine constitutional ques-
tions, it will be presumed that the Supreme Court disposed
of the question adversely to appellants' claim. *Gowdy
Gas Well, etc., Co.* v. *Patterson,* 29 Ind. App. 261.

It is further urged against the complaint that its aver-
ments show that appellee went upon, or remained upon, or
in dangerous proximity to, the street car track without
exercising any care whatever; that she entrusted herself in
a closed carriage to a carrier, directing him where to drive,
and paying no attention to the movements of the vehicle;
that she was injured by the joint negligence of this car-
rier and a third person; that the appellee's carrier is, as to
such third person, her agent and she is responsible for its
negligence. It will be noticed that it is averred that ap-
pellee, in taking passage with the transfer company, in-
structed said company to drive her to the building owned
and operated by the Union Railway Company, etc.; that
after having reached said station said transfer company

negligently caused the carriage to be stopped near the track of the street railway; that it is also averred that the carriage was closed, and that appellee could see no danger. No direction was given as to the route to be pursued, nor the particular location of the carriage. Appellee exercised no other control over the driver of the coupé than to direct him to the place to which she wished to be conveyed. He was the servant of the transfer company. She was not responsible for his negligence, which in part caused the collision resulting in appellee's injury. It is the rule that where injury is caused by the joint or concurrent wrongful acts of two or more persons they may be prosecuted therefor jointly or severally. *Transfer Co. v. Kelly,* 36 Ohio St. 86.

The negligence of the driver is not imputed to appellee, who merely directed the destination. *Little v. Hackett,* 116 U. S. 366, 6 Sup. Ct. 391, 29 L. Ed. 652,—in which the doctrine of imputed negligence is discussed, and many cases cited. *Transfer Co. v. Kelly, supra; Wabash, etc., R. Co. v. Shacklet,* 105 Ill. 364, 44 Am. Rep. 791; *Cuddy v. Horn,* 46 Mich. 596, 10 N. W. 32, 41 Am. Rep. 178; Thompson, Negligence (2d ed.), §§500, 502, cases cited and note, §3080, and note; *City of Michigan City v. Boeckling,* 122 Ind. 39; *Town of Knightstown v. Musgrove,* 116 Ind. 121, 9 Am. St. 827; *Brannen v. Kokomo, etc., Co.,* 115 Ind. 115, 7 Am. St. 411; *Chicago, etc., R. Co. v. Spilker,* 134 Ind. 380.

In §502 of Thompson, *supra,* the author says: "While there are a few untenable decisions to the contrary, nearly all American courts are agreed that the rule under consideration extends so far as to hold that where a person, while riding on a private vehicle by the invitation of the driver, or the owner, or the custodian of the vehicle, and having no authority or control over the driver, and being under no duty to control his conduct, and having no reason to suspect any want of care, skill, or sobriety on his part, is injured by the

concurring negligence of the driver and the third person or corporation, the negligence of the driver is not imputed to him so as to prevent him from recovering damages from the other tort-feasor," citing many cases.

In §503, of Thompson, *supra,* the author says: "But, as already stated, the rule of the preceding cases does not, under all circumstances, absolve the passenger in the private carriage from taking such precautions for his own safety as, under the circumstances, are reasonable. If he is *riding by the side of the driver* in an open carriage, and the driver, on approaching a railway track, fails to make any use of his faculties, to ascertain whether or not a train is approaching, —then it is a reasonable suggestion that the passenger ought to call his attention to the situation and remonstrate with him, or, if necessary to his own safety, leave the vehicle. It has been ruled that a person so riding is bound to exercise ordinary care for his own safety; and consequently that an instruction to the jury which directed their minds to the sole inquiry whether the driver of the wagon was exercising ordinary care, was erroneous as calculated to mislead them. In another court it is reasoned that the rule that the negligence of a driver of a wagon is not imputable to one riding with him when the accident occurs at a railroad crossing is applicable only to cases where the relation of master and servant, or principal and agent, does not exist, or where the passenger is seated away from the driver, or is separated from him by an enclosure, and is without opportunity to discover the danger and to inform the driver of it. * * * The sound conclusion seems to be that where a person who is *sui juris*—capable of caring for himself or herself—voluntarily rides in the private carriage of another, at his invitation or with his license or sanction, and is injured through the negligent driving of the latter, his negligence will or will not be imputed to the guest or licensee according to the circumstances, and it will therefore be, to a large extent, a question of fact."

The complaint avers that appellee's injuries were occasioned by the negligent acts of both appellants. The particular facts averred do not show contributory negligence. The complaint was sufficient to withstand a demurrer for want of facts.

Instruction number one, requested by the appellant street railway company and refused by the court, directed the jury to return a verdict in favor of said appellant. This action of the court was not error. The evidence presented a state of facts to be passed upon by the jury upon proper instruction. Instruction "A," requested by appellant and refused, was to the effect that if the driver of the cab was guilty of negligence, that he was the agent of appellee and that she was responsible for such negligence. It was properly refused. Exceptions are based upon the action of the court in refusing to give numerous instructions requested, and in giving instructions to the jury to which exceptions were taken. An examination of the instructions given by the court shows that of the instructions requested and refused, those applicable to the evidence and correctly stating the law, were, in substance, included in the instructions given by the court. The instructions given by the court were full and fair upon the evidence and the issues.

The jury answered interrogatories thirty-three, thirty-four, thirty-five, and thirty-six, requested by the railway company, "No evidence." The court overruled appellants' motion to require more specific answers. The answers are assigned as reasons for a new trial. If there was evidence, as charged, to show that the answers were untrue, that they were not supplied by the evidence, this was no reason for returning them, but the question is properly presented in a motion for a new trial. *Board, etc., v. Nichols,* 139 Ind. 611. Said interrogatory thirty-three required the jury to find whether the appellee, at the time the vehicle in which she was riding crossed Louisiana street, looked; the thirty-

fourth, whether she listened for cars on the said track; the thirty-fifth, whether, after the vehicle passed over the said track, before appellee was injured, she looked westward; the thirty-sixth, whether she listened for the approach of cars. If any answers which the evidence would have warranted could not have controlled the general verdict, the reasons for a new trial are not well founded.

The injury to plaintiff did not occur while she was crossing the track. In answer to the thirty-seventh interrogatory the jury found that had appellee looked westward along Louisiana street, while sitting in the vehicle, after it had crossed the south track she could not have seen the car which struck the vehicle approach. The coupé was not on the track when struck, and if, by listening, she could have heard the noise of an approaching car, her failure to listen would not, under the circumstances, have been necessarily negligence, as a matter of law, but a circumstance to be considered by the jury in determining whether or not appellee contributed to her own injury, the burden of which was upon appellants. The passing of cars along the track was to be expected, and the vehicle not being on the track was presumably, from the standpoint of the passenger, not in danger. Any answers which might have been given to these questions would not, necessarily, have controlled the general verdict, and if they were not truly answered it was not, for the reason given, reversible error.

There can be no controversy upon the proposition that appellee was injured by the negligent acts of the appellants. She is entitled to recover unless the evidence shows that her own negligence contributed to such injury. The burden of showing such contributory negligence was upon appellants. Whether appellee's failure to see and avoid the dangerous position in which she had been placed for the second or two of time after the cab was stopped until struck by the car was negligence on her part, was a question to be submitted to the jury. Upon the general verdict this issue

was found in her favor. There is no irreconcilable conflict in the answers to interrogatories, and the latter must stand.

There is evidence fairly tending to sustain the verdict. We have passed upon the controlling questions discussed, and find no error for which the judgment should be reversed. Judgment affirmed.