Submitted on briefs April 2; affirmed April 21, 1942

# HARRINGTON *v.* PORTLAND TRACTION CO.

(124 P. (2d) 715)

Before KELLY, Chief Justice, and BELT, BAILEY, LUSK, RAND, ROSSMAN and BRAND, Associate Justices.

*Willis West,* of Portland, for appellant.

*Griffith, Peck, Phillips & Nelson* and *John J. Cough-lin,* all of Portland, for respondent.

LUSK, J.

■ Since both vehicles had the right to the use of the streets, it was the duty of the defendant company in the operation of its street car to use ordi-

nary care to avoid a collision with the automobile. *McKeag v. Portland Electric Power Company*, 128 Or. 614, 619, 275 P. 667. In that case (which involved a collision with an automobile which had stalled on the track in front of the defendant's car), the court quoted with approval the following from 25 R.C.L., Street Railways, 1251, § 113:

"It is the duty of the motorman to keep a lookout for vehicles on the track, and to give timely warning of the approach of the car, when he discovers, or in the exercise of ordinary care by keeping a lookout should discover, the presence of vehicles on the track in a place of apparent peril, and to exercise ordinary care to prevent a collision, and a failure to do so is negligence."

■■ We take it that it would not be contended that in no conceivable circumstances would the duty arise on the part of the motorman to look to the rear or to the side of his car for the purpose of discovering possible danger of collision with another vehicle or with a pedestrian. On the other hand, to impose on a motorman the constant duty of keeping a watch to the rear or the side would be an unnecessary and impracticable rule. Other users of the streets, whether motorists or pedestrians, know that a street car will run on its tracks; and, since they have a greater freedom of motion the duty rests upon them, as a rule, to keep away from the car. See, *Forbes v. United Electric Railways Co.*, 49 R. I. 465, 468, 144 Atl. 154, 62 A.L.R. 305. It is not without significance that, while motor vehicles are required by law to be equipped with rear-view mirrors, the legislature has never deemed a similar regulation necessary for street cars.

■■ That the rear end of a street car passing through a curve will swing out and overlap the street beyond the track is "an obvious fact". *Mangan v. Des*

*Moines City R. Co.*, 200 Iowa 597, 605, 203 N. W. 705, 41 A.L.R. 368. Hence, motorists and pedestrians are charged with knowledge of this fact, and it has usually been held that the motorman is under no duty to warn adult persons in apparent possession of their normal faculties of danger from the outswing, or to keep a lookout to the rear in order to prevent a collision from that cause. Thus, where a street car is passing a pedestrian on a curve a motorman has the right, generally speaking, to assume that the pedestrian, being charged with knowledge that the rear of the car will project further beyond the track than the front, will stand far enough away or if necessary draw back or step aside to avoid injury; and the rule of ordinary care does not impose on the motorman the duty either of warning the pedestrian or watching him as the car continues its course. 21 R.C.L., Street Railways, 1245, § 108; *Elder v. Rutledge*, 217 Ind. 459, 27 N. E. (2d) 358; *Miller v. Utah Light & Traction Co.*, 96 Utah 369, 86 P. (2d) 37; *Miller v. Public Service Corp.*, 86 N.J.L. 631, 92 Atl. 343, L.A.R. 1915 C, 604; *Gribbins v. Ky. T. & T. Co.*, 150 Kentucky 276, 150 S. W. 338; *Zalewski v. Milwaukee Electric Railway & Light Co.*, 219 Wis. 541, 263 N. W. 577; *Noonan v. Boston Elevated Railway Co.*, 263 Mass. 305, 160 N. E. 811; *Kelly v. Chicago City Railway Co.*, 283 Ill. 640, 119 N. E. 622; *Duffy v. Philadelphia Rapid Transit Co.*, 291 Pa. 564, 140 Atl. 496; annotation, 55 A.L.R. 479.

But the circumstances may demand a different result. Thus, in *Kelly v. Chicago City Railway Co.*, supra, the plaintiff, a prospective passenger, was misled by the manner in which a street car was operated into the belief that it would stop for him before reaching the curve; instead, the car speeded up, and, by

the time that the plaintiff realized that it would not stop but would continue around the curve, it was too late for him to avoid being struck by the rear end. In *Elder v. Rutledge,* supra, a pedestrian, having the right of way under a city ordinance, had passed in front of a standing street car into a safety zone and was prevented from proceeding further by heavy automobile traffic, which started across his path on a signal from a traffic officer. The street car started on the same signal and commenced to round a curve, causing the rear end of the car to swing into the safety zone and strike the pedestrian. In both these cases it was held that the question of the street car company's negligence was for the jury. In the Kelly case the ground of decision is obvious from the brief statement which we have made of its facts, while in the Rutledge case it was said that the motorman was charged with knowledge that the pedestrian had passed in front of his car and did not have time to clear the outswing of the rear end before the traffic blocked his passage, and, therefore, that the motorman should have known of the position of extreme peril in which he was placed without fault of his own. A somewhat similar case is *Mangan v. Des Moines City R. Co.,* supra, where the fact of controlling importance was that the plaintiff was struck while standing in the apparent security of a safety zone established by the defendant itself.

There are cases involving collisions at curves between street cars and other vehicles in which it is held that the motorman was warranted in relying on the assumption that the driver of a horse-drawn wagon or the operator of an automobile would take care to avoid the outswing of the rear end of the street car, and, therefore, there was no evidence of negligence:

*Louisville Railway Co. v. Ray*, (Ky.) 124 S. W. 313; *Ryan v. Milwaukee Northern Railway Co.*, 186 Wis. 537, 203 N. W. 340; *Wheeler v. Des Moines City Railway Co.*, 205 Iowa 439, 215 N. W. 950, 55 A.L.R. 473; *South Covington & C. Street R. Co. v. Besse*, 33 Ky. L. 52, 108 S. W. 848, 16 L. R. A. (N.S.) 890; while in others, where there was evidence that the motorman or the conductor of the street car either actually knew or should have known of the impending danger of collision with the other vehicle, the question of whether the defendant exercised ordinary care to avoid injuring the plaintiff was held to be one of fact for the jury: *Metropolitan R. Co. v. Blick*, 22 App. D. C. 194; *Frank Bird Transfer Co. v. Krug*, 30 Ind. App. 602, 65 N. E. 309; *Charles P. Anderson, Inc. v. St. Paul City Railway Co.*, 203 Minn. 119, 280 N. W. 3. See, also, to the same effect, *Forbes v. United Electric Railways Co.*, 49 R. I. 465, 468, 144 Atl. 154, 62 A.L.R. 305, annotation p. 307, in which a demurrer to the complaint was overruled.

"What constitutes negligence can not be laid down as a rule for every cause, but * * * necessarily depends upon the special circumstances of the particular case under investigation." *United States Electric Lighting Co. v. Sullivan*, 22 App. D. C. 115, 133. It would not, therefore, be beneficial to analyze and compare the facts of the cited cases, the decisions in which rest upon the application of settled principles of the law of negligence to varying states of fact.

Since there is no evidence that the defendant's motorman knew of the presence of the automobile or of impending danger to the plaintiff, the controlling question, as the parties apparently agree, is whether it was the duty of the motorman, in the exercise of

ordinary care, to ascertain that situation and, having done so, to refrain from starting the car until the automobile had gotten out of harm's way.

■ We think that in the circumstances of this case the law imposed no such duty on the defendant. Rather, it was the duty of the operator of the automobile to have it under control so as to be able to avoid an accident of the kind that occurred. The car was before his eyes, and he knew its course. It was not illegal for the car to stop where it did, though it may have been unusual. There was no traffic in the vicinity, and under those conditions we cannot conceive of such a stop being considered negligence. The motorman, unlike the operator of an automobile, was not required by any statute to give a signal of his intention to stop; and he cannot, as we think, be held to the duty of anticipating that an automobile would be driven so closely in the rear of the street car that it could not be stopped without getting into the path of the car. In the absence of some fact or circumstance which would put the motorman on notice to the contrary, he had the right to assume that things to the rear were normal and that he could start again without endangering anyone.

The plaintiff argues that there is a difference between the duty of a motorman when his car is standing still and when it is in motion, and cites the cases of *Charles P. Anderson, Inc. v. St. Paul City Railway Co.*, supra, and *Forbes v. United Electric Railways Co.*, supra, in support of his contention that the motorman, before proceeding, should have used the ''opportunity to observe and survey the respective positions of vehicles at rest in close proximity to the street car''.

The accident in the Anderson case occurred at one of the busiest crossings in St. Paul, Minnesota, and,

as the court said, "the position of the defendant's single track on Ninth street and its short curve onto Wabasha make it peculiarly dangerous to vehicular traffic under circumstances such as are here presented." In the Forbes case the motorman knew of the automobile's position and knew that the overhang of his car would strike it if its position was not changed.

Neither decision is authority for a rule requiring a motorman in ordinary circumstances, before starting his car, to look to the rear or side to ascertain the possibility of a collision with a motor vehicle, and neither presents facts similar to the facts of the case at bar.

In our opinion the record contains no evidence of negligence on the part of the defendant, and the judgment of nonsuit is, therefore, affirmed.