JEFFERS, Administratrix, Appellant, vs. GREEN BAY & WESTERN RAILWAY COMPANY, Respondent.

*January 30—February 20, 1912.*

*Trial: Directing verdict: Appeal: Review: Evidence: Uncontradicted testimony: Weight: Physical circumstances: Railroads: Death of switchman: Kicking cars: Misleading orders: Negligence of foreman: Contributory negligence: Unsafe place: Proximate cause: Questions for jury.*

1. It is the duty of the trial court, if convinced that there is no fair ground in the evidence for a determination in favor of the plaintiff, to direct a verdict for the defendant.
2. Such a decision of the trial court will not be disturbed on appeal unless manifestly wrong. Even if not right upon the ground

upon which it was made, it may be right upon some other ground.

3. One physical situation demonstrated to have existed, or one circumstance established beyond any reasonable ground for doubt, may outweigh the most positive uncontradicted evidence of one or any number of witnesses.

4. Plaintiff's intestate, a switchman, was killed by being precipitated from the top of the fifth of a string of cars, which were being pushed southward in defendant's yard, when the sixth, or most southerly, car was kicked upon a switch track. There was undisputed testimony that, as the sixth car had about reached a cross street, the deceased mounted the northwest corner of that car and was seen standing thereon, and similar testimony that, at a point north of the center of the street, he ascended the ladder at the northeast corner of the fifth car,— the latter testimony being corroborated by the certainty that he was on the fifth car at the fatal moment. The trial court concluded that after mounting the sixth car the deceased had gone down the ladder at the northeast corner thereof and had mounted again at the northeast corner of the fifth car and was proceeding on the top thereof towards the sixth car when the accident happened, and directed a verdict for defendant on the ground that deceased had gone out of the proper course without any reason therefor. *Held* that, in view of the unreasonableness of such movements and the inadequacy therefor of the time in which they must have been made if at all, the jury would have been warranted in finding that deceased did not mount the sixth car at all; and that the court should not have directed the verdict upon the theory on which it did.

5. The jury might also have found that the deceased mounted first the fifth car at the northeast corner and was proceeding on the top thereof towards the sixth car, supposing that the sixth car was to be spotted on the switch track or that notice would be taken of his position before the stop signal was given to the engineer; and that in so doing he was not acting contrary to orders and was not negligent.

6. Upon the evidence above stated and evidence showing, among other things, that the deceased was not accustomed to yard work and had worked but part of one day in this yard, that the particular ways of the yard were not explained to him, and that the foreman in giving the orders under which deceased was acting had used terms which were likely to mislead as to whether the sixth car was to be kicked or spotted, the jury might reasonably have found that deceased was misled by the negligence of the foreman as to the nature of the movement

to be executed; that the foreman was also negligent in not ob-
serving whether deceased was on the sixth car before giving
the signal to stop the other cars; that the working place of
deceased was not reasonably safe under the circumstances; and
that such negligences, or some of them, proximately caused the
accident. It was error, therefore, to take the case from the
jury.

APPEAL from a judgment of the circuit court for Portage
county: CHAS. M. WEBB, Circuit Judge. *Reversed.*

Action to recover for the claimed negligent killing of Louis
Jeffers.

The deceased was an experienced brakeman but not accus-
tomed to yard work, particularly in defendant's yard at
Green Bay, where he was killed. He was familiar with
switching movements, called kicking, as well as those called
spotting cars. At his request he was transferred from regu-
lar freight train service to the particular work. The fatal
accident occurred during his first day's work and the first
time he received such an order as the one in question. He
had before performed like service but not, perhaps, in a yard
where there was a scale track called the "scale" or "scales."
He did not ask for instructions. None were given. There
were no particular circumstances indicating that he required
such other than the local custom respecting the name of the
particular track. The work in progress when the accident
occurred was being done in the ordinary way in the particular
yard. There was evidence to show that the cars were moving
pretty fast,—perhaps more than ordinarily so. The switch-
ing crew was composed of Gallagher, the foreman, Jeffers, the
deceased, and one Boex, a switchman, besides the men on the
engine. There was a string of six cars attached to the switch
engine in front. It was on a lead track connected with two
or more switch tracks to the south. The last car from the
engine was a short distance north of a cross thoroughfare,
called Mason street. The purpose was to move the cars
southerly across the street and set the sixth in on the switch

track, known as the "scale" or "scales." That was a designation given to the track by the custom in the yard. It turned to the left about 100 feet south of the street. There was a slight easterly curve in the lead track, the degree of curve being such as to enable the engineer from his ordinary position, to see a person, if standing in the street near to and west of the track, or in the act of climbing on the sixth car on such side, or perhaps if on top of the car or the one next to it. There was undisputed oral evidence that before the movement commenced the foreman and Jeffers were in pretty close company west of the track and north of the street. The foreman signaled the engineer to move southerly. A set of weighing scales intercepted the "scale" or "scales" track some twenty rods southerly of the street. There was ground for one circumstanced as Jeffers was, to understand an order to put a car in on the "scales" or ride a car in on the "scales," to refer to the weighing scales, when the idea might be to put the car on the track on which the weighing scales were located. The purpose at the time in question, was, as testified by the foreman, to place the car on the "scales" track by a kicking movement. That is, giving the string of cars such speed that, at a proper point and time, the particular one could be released and the rest suddenly brought to a stop, allowing the former with the brakeman thereon to continue to a suitable clearance on the "scale" track and be there stopped by his setting the brake. In a movement to place a car on the weighing scales, called "spotting," the evidence tended to prove that the car would not be detached till in position and the brake set, or something done, if necessary, to prevent its moving by gravity. So, in a spotting movement, it was safe for the brakeman to mount a car next to the particular one on the way to the latter, while in a kicking movement if he did so and in attempting to pass to the particular car, reached a point near the division between the two at the instant of the release and stop order, he was almost sure to be thrown forward to the

ground and severely injured, if not killed. There was evidence to the effect that, ordinarily, there was little if any difference between the language of a kicking order and that of a spotting order. The foreman testified that in case of the latter, with reference to the scales the word "spot" would be used and nothing be said about setting a brake or riding the car. His associate testified that the proper order "would be 'ride this car and set a brake on it on the scales;' that would mean a spot, not a kick. It would mean to 'ride the car.'" It was of vital importance for the brakeman to understand the nature of the movement as to whether the car was to be spotted or kicked and to so shape his course as to be on the particular car in case it was to be kicked at the time of the engineer's response to the stop signal and to be so located as to guard against an inefficient effort to release the car, resulting in its being suddenly brought to a stand with the rest.

There was no rule or general custom in the yard by which one circumstanced like the deceased could understand, with certainty, from the language of the order given whether a kicking or a spotting movement was to · be executed. He might fairly in this case have supposed it to be the latter and so that it was safe to pass from the fifth to the sixth car while the string was being pushed down to place the latter car on the weighing scales. There was evidence tending to show that the method of designating the particular track was not only local but that the characterization in common use was "scale," not "scales." The foreman testified that the latter was the usual term while the superintendent testified that the former was the one commonly used.

About as the movement commenced the foreman said, speaking to Jeffers, "Ride the car" or "this car," or used words of similar import, "in on the scales and set the brake and then go to dinner." The witness testified variously as to the precise words he used, but there was no very material difference between his several phrasings of the matter.

There was undisputed oral evidence that Jeffers, as the southwest corner of the sixth car reached him, and about in Mason street, ascended the ladder and an instant later was seen on top; also that about the same time he was seen in Mason street on the east side of the track ascend the ladder at the northeast corner of the fifth car and proceed rapidly towards the sixth. After the foreman saw him, as he said, mount the sixth car and the string had attained the proper speed and was at the appropriate location, he released the particular car by using the appliance therefor at the side, gave the engineer the stop signal which was promptly obeyed, the five cars and the engine coming suddenly to a stand, the released car rapidly moving on and, at that instant, Jeffers plunging head foremost from the southerly end of the fifth car.

All the testimony as to Jeffers having mounted the sixth car was by the engineer, the foreman, and switchman Boex. The latter testified to having seen Jeffers standing on top of the sixth car while the foreman was running with the string in readiness to give the stop signal. The one who testified to having seen the decedent mount the fifth car, was a man of mature age who had long been a resident of Green Bay. The effect of his evidence was that the cars were under his observation throughout, the whole occupying but a short time; that he saw Jeffers at a point north of the center of Mason street, on the east side of the track, ascend the ladder at the northeast corner of the fifth car and go rapidly towards the sixth, proceeding till he fell from the top; that when the man took hold of the ladder the cars were moving at a pretty rapid rate,—so rapidly that the foreman whose limbs he could see, had to run to keep up. The testimony of the foreman was the same as regards his running alongside of the car. He did so with his hand holding the switching appliance till the string reached the proper place and speed and then pulled the

pin and gave the engineer the stop signal. During this time he made no observation as regards the whereabouts of Jeffers. Most of the time he was, perhaps, where he could not have seen him except by moving back a little from the side of the cars.

All circumstances referred to are within the pleadings and the evidence. If all the oral testimony be true, Jeffers mounted the sixth car, then proceeded quickly, except for the instant Boex saw him standing still on top of the car, to the north end, descended to the ground at the northeast corner and in Mason street from which he went up the ladder at the corresponding corner of the fifth car, and proceeded rapidly back towards the sixth and met his death in doing so. The trial court adopted that theory. No one in charge of the movement, according to the evidence, saw Jeffers after he was observed by Boex, as he said, standing on the sixth car, till he fell from the fifth.

The negligence claimed is: (a) Conduct of the engineer and foreman in running the cars at an unusual rate of speed without giving proper attention as regards the location of Jeffers; (b) Suddenly stopping the car on which deceased was located without warning him that such an occurrence was impending or likely to happen; (c) Failure to furnish him a reasonably safe place to work; (d) Failure to instruct him as to the peculiar dangers of his work according to the custom in the particular yard.

The trial court held that, regardless of whether Jeffers understood what kind of a movement was to be executed, or whether the cars were moved at an unreasonable rate of speed, or the string after the sixth car was released, was stopped unusually quick,—he went out of his proper course without any reason therefor and came to his death thereby. Upon that theory the verdict was directed for the defendant and judgment rendered accordingly.

For the appellant there was a brief by *Phillips & Hicks,* attorneys, and *Glicksman, Gold & Corrigan,* of counsel, and oral argument by *W. D. Corrigan.*

For the respondent there was a brief by *Greene, Fairchild, North & Parker,* and oral argument by *H. O. Fairchild.*

Marshall, J.    Is it clear the trial court erred? It would not avail appellant for it to merely appear here, looking at the printed record alone, that the decision below is wrong.  Balancing the mere record probabilities in the affirmative against those in the negative and adding to the latter the superior opportunities afforded the trial court, which could not be presented here, do the former outweigh the latter,—not merely appreciably, but so decidedly as to produce conviction that there can be only slight, if any fair, doubt about it?

It is recognized that in such circumstances as the trial judge faced, he is bound, in the performance of duty, to take the case from the jury if convinced there is no fair ground in the evidence for a determination in favor of the plaintiff. Efficient administration requires such duty to be met with courage, consideration, and firmness.  To the end that such efficiency may be promoted as well as from the very nature of the matter, initial decisions, as in this case, should not be disturbed except for very substantial reasons.  Recognizing that, it is the settled policy of this court, one so long adhered to as to have all the force of unwritten law, that the result below will not be disturbed unless not only wrong, but manifestly so.

In determining whether the decision in question will stand the test indicated, we must view it in two aspects: (a) Is it right, looking only at the ground on which it was made? (b) If it be not right on such ground, is it manifestly right on some other?  The real right of the matter is the ultimate end to discover and effectuate, rather than the legitimacy of the logic upon which the result complained of was grounded.

It will be noted by the statement, that the circuit judge assumed, because witnesses testified, positively, to having seen Jeffers mount the sixth car and no one contradicted them, that such must be the fact. So that was set down as a verity. The testimony of the person, who gave evidence to having seen Jeffers mount the fifth car from the east side, corroborated by the certainty that he was thereon at the fatal moment, and the fact that such person was not disputed by the word of any other witness, was taken as true, beyond reasonable ground for dispute. So that was set down as a second verity. From such premises the trial court reasoned to the third verity, as was thought, that after going up the ladder to the top of the sixth car, the decedent traveled thereon to the northeast corner thereof, then down the ladder at that point to the street, such point being nearly as far north as he was before, then that he grasped the ladder at the northeast corner of the fifth car as it came to him, ascended to the top of such car and proceeded back to reach the sixth, and met his death in doing so.

In reasoning as indicated, it seems the fact was lost sight of or not given due consideration, that truth is not, necessarily, according to the evidence of one or more witnesses, however fair they may appear to testify, and notwithstanding absence of any direct conflict from the mouth of any other witness. One physical situation demonstrated to have existed, or one circumstance, established beyond any reasonable ground for doubt, may outweigh the most positive uncontradicted evidence of one or any number of witnesses.

Here we have physical situations and circumstances of the nature indicated, as follows: The man was on the fifth car going to the place to which he was assigned when the catastrophe occurred. No rational person could be reasonably expected to make such movements in the whole, as the trial court suggested. The time between the claimed ascent to the top of the sixth car and the certain ascent from the street to the top

of the fifth, was, under the circumstances, as a jury might reasonably conclude, so inadequate as to produce conviction that two ascents did not occur. Such time was, manifestly, too short, especially if the testimony of Boex, one of the witnesses relied on to sustain the result reached, that he saw Jeffers standing on the sixth car, is believable. "I claim," said the witness, "he was standing on the car doing nothing. He was not walking either way. Gallagher was running at that time alongside the south end of the fifth car." According to this, Jeffers was standing still on the sixth car at a time when, as there is evidence tending to show, it had cleared the street, or nearly so, the engineer had received the kick signal and speeded up the train, and the foreman was making ready to pull the pin, and yet Jeffers covered the length of the car, descended therefrom to the street, about as far north as the point of ascent, waited for the train to move the length of a car, bringing the northeast corner of the fifth one to him, then ascended to the top thereof and doubled back to near the south end by the time it reached a point about eighty feet south of the street where the fatality occurred,—all such movements being equivalent to traveling a greater distance than the foreman covered, who was on a run most of the time as there is evidence tending to prove. We cannot escape the conclusion that a jury, facing the situation pictured, might reasonably reject the whole theory upon which the decision was grounded as utterly improbable,—come to the conclusion that the ascent to the top of the sixth car as testified to by the foreman, the engineer, and Boex, did not occur.

Counsel for respondent present the contrary of the foregoing in its most favorable light, but, at the best possible for that side, only the major probabilities are in favor of the trial court's theory. The case is to be viewed in the most favorable aspect on the evidence for plaintiff. But, whatever viewpoint be selected for taking a survey of the situation, it seems clear beyond room for fair controversy, that the jury

might reasonably have come to the conclusion that Jeffers did not mount the sixth car at all but was on his way there for the first time at the fatal moment. The trial court, erroneously, as it seems, thought the testimony of the three witnesses to the contrary was wholly unimpeached and hence that all the other evidence was required to be harmonized therewith, if possible, and otherwise rejected. That was wrong; very clearly so, as we have seen.

It follows that the decision complained of cannot be supported on the ground on which it was made.

In examining the case further to determine whether the verdict be right, though grounded on untenable reasoning, we must assume, because a jury might have so concluded on the evidence, that at the moment the witnesses claimed to have seen Jeffers mount the sixth car, he, instead, crossed the track just before the car reached him and, a moment later, mounted the fifth car as the northeast corner came to him, and proceeded by way of the top thereof towards his destination on the sixth car, either supposing that the latter was to be spotted on the weighing scales or expecting that some efficient notice would be taken of his whereabouts before giving the stop signal to the engineer. There must be some explanation of his movements which occurred just before the fatal event, consistent with his not expecting, or from his viewpoint being bound to expect, that the movement of the cars which took place was about to happen. Otherwise, in view of the fact that he was an experienced railroad man, the conclusion would be inevitable that he was irrational or bent on committing suicide. Counsel for respondent seem to concede that, and to seek to escape from the dilemma by claiming that decedent's duty was to mount the sixth car and stay there till he set the brake, and that, had he done so instead of stepping aside, for some unexplained, and unexplainable, reason, and mounting the fifth car from the street on the east side, either originally or after having descended from the sixth car, he

would not have encountered the danger, and so defendant is not liable; since those in control of the car had no reasonable ground to suppose he would take any such course, or be elsewhere than on the sixth car when the stop signal was given.

The stated argument of counsel is in harmony with part of the trial court's logic, the key to which is that Jeffers in fact mounted the sixth car.   That, the jury might reasonably have rejected, as we have seen.

We are unable to find any satisfactory basis in the record for counsel's theory that, if the decedent endeavored to reach his destination on the sixth car by going thereto by way of the fifth, mounting it from the east side, he disobeyed orders or was guilty, necessarily, of want of ordinary care; especially if he supposed his position would be observed or some warning would be afforded him before the stop signal was given to the engineer, moreover, if he supposed, and had reasonable ground therefor, that he was participating in a spotting movement.   The order was not to mount the particular car and ride it in on the "scale track" and set the brake.   True, he had to reach the top of the car in order to ride it and be in position to set the brake; but as suggested, we are unable to discover any certain evidence that it was contrary to orders or, necessarily, negligent for him to endeavor to reach his post by way of the fifth car.

We appreciate that for one circumstanced as Jeffers was to cross the track before the coming car and ascend from that side to the top of the fifth car and proceed thereon to his destination, seems somewhat strange; but such movements, as we have seen, would be far more reasonable than those supposed and upon which the verdict was grounded.   Now is it not reasonable to conclude, that it was the duty of the foreman, before dropping the sixth car, to have had some satisfactory evidence that Jeffers had mounted it?   That aspect of the matter seems to have been appreciated and, as was supposed, indisputable proof on the question made.   If he was not seen

Jeffers v. Green Bay & Western R. Co. 148 Wis. 315.

to mount the car, he must have so suddenly disappeared around the end of it, that the foreman had little, if any, ground to believe he had reached the top. In those circumstances we are not prepared to hold that the jury could not reasonably have decided, had the matter been left to them, that it was the foreman's duty to have made some effort to acquaint himself with the decedent's location before giving the stop signal. In such circumstances the case might well have been sent to the jury regardless of whether the design was to execute a spotting or a kicking movement.

So it seems the jury would have had ample ground to conclude that Jeffers supposed the car was to be spotted on the weighing scales. In that event his movements from his viewpoint, were not attended with any danger. Did he have reasonable ground for so supposing? If so, was his condition of mind attributable to fault of the foreman or others who should have instructed him?

It seems quite significant that there is ample evidence to sustain the theory that the particular track was known as the "scale," not the "scales." True, the evidence is perhaps not conclusive on this but is enough so to lead to the conclusion that the jury might properly have so found. The road superintendent testified, very positively, one way and the foreman the other. That being so, Jeffers, who was not familiar with the particular yard, or, so far as the evidence shows, with anywhere there was a track called the "scales" or "scale," may have thought the car was to be placed on the weighing scale and been misled in that regard by the foreman's use of the word "scales,"—the characterization, in common parlance, of weighing scales, instead of "scale," which might, perhaps, be fairly understood, without reference to the local custom, to mean the scale track. That Jeffers was in some way misled seems pretty certain. In any event the jury had fair room for such conclusion. He would not have taken the course which he did, as the jury might well have concluded, except

in the belief that the car was to be spotted.   Now if the man was misled and so came to his death, whose fault was it?   It seems there is ample ground for saying the mischief was caused by the foreman negligently using the term "scales" instead of "scale," especially under the circumstances of decedent's well known unfamiliarity with the yard and the particular local custom.

So in view of the suggested known want of experience of the deceased, and of the fact, so far as appears, that there was no rule or custom by which one circumstanced as the decedent was could determine a spotting from a kicking order with certainty, and the use of terms in giving orders quite likely to mislead as to the nature of the contemplated movement, and in view of the further fact that the particular ways of the yard were not explained to the deceased, we are constrained to hold that the jury might reasonably have come to the conclusion that Jeffers was misled by the negligence of the foreman; that there was further negligence in not taking some observation as to whether he was on the sixth car before giving the stop signal; also that his working place was not reasonably safe under the circumstances; and that such negligences, or some of them, were the proximate cause of the fatality or proximately contributed thereto.   So the case is within the field of jury duty and the trial court clearly erred in deciding otherwise.

*By the Court.*—The judgment is reversed, and cause remanded for a new trial.