SLAM, Appellant, vs. LAKE SUPERIOR TERMINAL & TRANSFER RAILWAY COMPANY and another, Respondents.

*January 29—February 18, 1913.*

*Master and servant: Injury: Dangerous working place: Railroads: Switching of cars: Failure to give warning: Negligence: Contributory negligence: Questions for jury: Appeal: Review: Weight given to decision of trial court.*

1. Plaintiff, an employee of the defendant dock company, was engaged with others in loading coal into cars upon a track of the defendant railway company. Parallel with the loading track was a switching track, upon which loaded cars were "kicked" one by one after being weighed, each car striking the string of cars already there and moving them forward from four to fifteen feet. No warnings of such movements were given. The space between the two tracks was about eight feet and the clearance between cars thereon about four feet. When the loading of a car was completed the men would descend to this space and with heavy instruments move the car away and put an empty one in its place. Plaintiff had worked about coal docks for three years, but for this company only four days and in this place only a few hours. As he descended backwards by a short ladder from a loaded car he was struck and injured by a string of cars which was just then pushed forward on the switching track. He testified that he was almost smothered with dust when he came out of the car and down the ladder. *Held*, that the questions as to negligence of the railway company in not providing any lookout or signal when the cars were moved, as to negligence of the dock company in not warning plaintiff of the danger or providing signals, and as to contributory negligence and assumption · of risk by the plaintiff, were all for the jury.

2. Because of the superior advantages of the trial court for judging of the weight of the testimony and its relevancy and effect, the decision below, either upon motion for nonsuit, motion for a directed verdict, or motion to set aside the verdict, that there is or is not sufficient evidence upon a given question to take the case to the jury, should not be disturbed by this court unless it clearly appears from the record to have been erroneous.

3. The verdict of a jury will be set aside by this court only when there is no evidence in its support or when, although there is

some slight evidence supporting it, still the great weight of the evidence to the contrary is so strongly reinforced by all reasonable probabilities and inferences as to be overwhelming.

4. The use of the expression "reasonable doubts," or other similar expressions, in the discussion of the foregoing rules in some cases, is not to be considered as changing or modifying the principles stated.

APPEAL from a judgment of the circuit court for Douglas county: FRANK A. Ross, Circuit Judge. *Reversed.*

The action is for personal injuries. The defendants are sued as joint tortfeasors. The *Northern Coal & Dock Company,* hereinafter called the dock company, was a corporation owning and operating a coal dock in Superior, having large coal sheds on the water front where coal was received from vessels and loaded by chutes into freight cars, standing on a railway track at the rear of the sheds. The defendant *Lake Superior Terminal & Transfer Railway Company,* hereinafter called the railway company, was a railway corporation owning and operating a switching railway at Superior, and doing the necessary switching in the dock company's yard, not only on the switch track immediately at the rear of the sheds but on two parallel tracks at the side thereof. The plaintiff was a laborer about twenty-eight years of age at the time of the accident (November 12, 1910), and had been in this country about three years, during all of which time he had lived at Superior and worked about the coal docks and yards. The plaintiff had worked four days for the defendant dock company at the time of his injury. On that morning he was a member of a gang loading nut coal into cars on the switch track aforesaid, which was at the rear of the coal shed, and was called track No. 3. The gang was composed of five men, one of whom went into the shed and managed the chute and the other four (among whom was the plaintiff) went into the car and distributed the coal as it came down the chute. In going into the car in question these men utilized a small

ladder with three or four rungs, which they leaned up against the grain door in the otherwise open doorway of the car. Parallel with this track and eight feet distant therefrom was another switch track called track No. 4, and at a like distance, still further away, was track No. 5. The clearance space between freight cars on tracks 3 and 4 was four feet. About 300 feet southerly from the coal shed and in connection with track 4 was situated a car scale, where cars were accustomed to be weighed. This operation, like all other switching operations in the yard, was done by the defendant railway company. When a string of cars was to be weighed, they would be switched to a point south of the scale, shunted onto the scale one at a time, and then kicked one by one northerly along track 4 toward the coal dock and shed. As each car moved northerly it would strike the string of cars already weighed, couple itself, and by its momentum move the entire string somewhere from four feet to fifteen or eighteen feet slowly northward. No man was ever stationed on the head car to give warning when this movement was going on. At about 10 o'clock in the morning of the day of the accident, and while the plaintiff was at work in the coal car on track 3, a weighing operation of this kind was going on with a string of eleven cars. A considerable number had been weighed and kicked northward, so that the string of such cars reached nearly to that part of track 4 directly opposite to the car on track 3 in which the plaintiff was working. The plaintiff's testimony tends to show that at this juncture he had completed his work in the car and came out of the car door the first of the gang, and descended the ladder backwards to the ground; that just as he was stepping to the ground and straightening up to move away to help push an empty car on track 3 up in place of the loaded one, the string of empty cars on track 4 was moved forward by the impact of a car just weighed and struck the plaintiff on the back and side, throwing him to the ground and inflicting serious injuries.

The plaintiff's claim was and is that there was sufficient evidence to justify findings (1) that the railway company was negligent in not providing any lookout or signal when the cars were moved forward on track 4 after weighing; (2) that the dock company was negligent in failing to warn the plaintiff of the danger and in failing to provide signals; and (3) that the plaintiff was free from contributory negligence and assumption of risk. From a judgment for the defendants on a directed verdict the plaintiff appeals.

For the appellant there was a brief by *Dietrich & Dietrich,* and oral argument by *H. W. Dietrich.*

For the respondents there was a brief by *John A. Murphy,* attorney for the railway company, and *Abbott, Merrill & Lewis,* attorneys for the dock company, and oral argument by *Mr. Murphy* and *Mr. I. K. Lewis.*

WINSLOW, C. J. While this is a case which may fairly be said to approach the border line, we think it clearly a case which should go to the jury on all propositions.

Touching the question of the alleged negligence of the defendants, it is to be observed that this is not a case of an ordinary switching yard where all the tracks are used for switching purposes, and where men are not expected to be except for the purpose of assisting in the movement of cars, but a case where a track used for loading purposes and about which men must work in the midst of dust and noise is placed next to a track which is used actively for switching purposes and for a kind of switching in which the cars move intermittently without warning and without the presence of a locomotive. It would be reasonable enough to hold as matter of law that in the ordinary switch yard where only switching is being done, it could not be justly held that warning of every switching movement must be given, but we do not feel that under the circumstances here present we can say so. Men were here required to labor in a dusty, noisy, and absorbing

occupation in closed cars on track 3. At intervals they were obliged to come out into the four-foot clearance space between tracks 3 and 4, and with heavy instruments move the loaded car away and put an empty one in its place, and then climb into the empty car and repeat the loading operation. Under these circumstances we think it clearly a question for the jury whether the rules of ordinary care do not require the keeping of a lookout or the giving of a signal when a car is to be moved on track 4, or the giving of a warning to the workmen in advance that they must look out for such a movement.

We also regard the questions of contributory negligence and assumption of risk as questions for the jury. It is true that the plaintiff had worked nearly all of the time in and about coal docks at Superior for some three years. His testimony, however, tends to show that at the other docks and yards where he worked there was no such situation of danger as there was at the place in question, i. e. no place where cars were shunted along without attendance, signal, or warning upon a track close to the loading track as was done here. It seems also by his testimony that he had worked on the coal company's dock only four days before the morning of the accident; that when he went to work the first day he loaded one car on the track in question, and was then sent to work in a boat, where he worked till the end of the second day, and then worked two days dumping coal in another part of the yard; that on the morning of the fifth day he was sent to load coal at 7 o'clock, and loaded four or five cars when his injury took place; that he saw no cars on track 4 the first day and saw no cars moving on that track on the day of his injury until the time that he was hurt, and that he was almost smothered with dust when he came out of the car and came down the ladder. It is not claimed that any signal was given, that any lookout was on the car, nor that the plaintiff was warned that cars were accustomed to be moved in this way without signal on track 4.

In holding that the evidence presents a jury question, in opposition to the conclusion of the trial court, we have not overlooked or forgotten the principle that the decision of the trial court on such a question must prevail here unless it clearly appears from the record to have been erroneous. This principle has been stated in substantially the same terms many times since it was first enunciated in *Powell v. Ashland I. & S. Co.* 98 Wis. 35, 73 N. W. 573. Among the cases referred to are *Dewey v. C., M. & St. P. R. Co.* 99 Wis. 455, 75 N. W. 74; *Powalske v. Cream City B. Co.* 110 Wis. 461, 86 N. W. 153; *Nicoud v. Wagner,* 106 Wis. 67, 81 N. W. 999; *Bohn v. Racine,* 119 Wis. 341, 96 N. W. 813; *McCune v. Badger,* 126 Wis. 186, 105 N. W. 667; *Hodge v. Smith,* 130 Wis. 326, 110 N. W. 192; *Nolan v. Kroening,* 130 Wis. 79, 109 N. W. 963; *Fleming v. Northern T. P. Mill,* 135 Wis. 157, 114 N. W. 841; *Clemons v. C., St. P., M. & O. R. Co.* 137 Wis. 387, 119 N. W. 102; *Fitzpatrick v. Lake Superior T. & T. R. Co.* 142 Wis. 65, 124 N. W. 1054; *Rogers v. Brown,* 143 Wis. 472, 128 N. W. 64; *Kroger v. Cumberland F. P. Co.* 145 Wis. 433, 130 N. W. 513. Other expressions have been used to express the same idea, as, for instance, in *Turtenwald v. Wis. Lakes I. & C. Co.* 121 Wis. 65, 98 N. W. 948, this court said that the circumstance that the trial court deciding such a question has some advantage over an appellate court "in doubtful cases is entitled to considerable weight upon appeal." In *Maanum v. Madison,* 104 Wis. 272, 80 N. W. 591, it is said that the decision of the trial judge on such a question is "entitled to weight, and in doubtful cases to controlling weight." In *Lind v. Uniform S. & P. Co.* 140 Wis. 183, 120 N. W. 839, it is said that "considerable reliance must be placed on the decision of the trial court who heard the testimony." In *Agen v. Metropolitan L. Ins. Co.* 105 Wis. 217, 80 N. W. 1020, it is said that the court should lean toward supporting such a decision in a case of fair doubt on the question. In *Meyst v. Freder-*

*ickson,* 146 Wis. 85, 130 N. W. 960, it is said that the trial
judge's determination on such a question "should be sup-
ported here unless manifestly wrong;" and substantially the
same words are used in *Jeffers v. G. B. & W. R. Co.* 148 Wis.
315, 134 N. W. 900.   In *Larzelere v. Wood,* 136 Wis. 541,
117 N. W. 1013, it is said that "deference is due the judg-
ment of the trial court" on a judgment of nonsuit.   See, also,
*Walsh v. C. & N. W. R. Co.* 149 Wis. 119, 135 N. W. 534.
It is considered that these cases and perhaps others contain-
ing like language were all intended to express and do in fact
express the same general idea, namely, that when the trial
judge rules, either on motion for nonsuit, motion for a di-
rected verdict, or motion to set aside the verdict, that there
is or is not sufficient evidence upon a given question to take
the case to the jury, the trial court has such superior advan-
tages for judging of the weight of the testimony and its rele-
vancy and effect that this court should not disturb the decision
merely because, on a doubtful balancing of probabilities, the
mind inclines slightly against the decision, but only when the
mind is clearly convinced that the conclusion of the trial
judge is wrong.   It is also considered that this is an entirely
reasonable and salutary principle; a principle upon which
the court has acted in the past and expects to act in the fu-
ture; a principle which gives due weight and dignity to the
decision of the trial judge and demands of him his best and
most conscientious service whenever such a question is pre-
sented.   The companion principle is also well understood,
namely, that the verdict of a jury will only be set aside by
this court when there is no evidence in its support, or, if
there be some slight evidence in its support, still the great
weight of the evidence to the contrary is so strongly rein-
forced by all reasonable probabilities and inferences as to
be overwhelming.   *Bannon v. Ins. Co. of N. A.* 115 Wis.
250, 91 N. W. 666; *Peat v. C., M. & St. P. R. Co.* 128 Wis.

86, 107 N. W. 355; *Asserin v. Modern B. of M.* 147 Wis. 520, 133 N. W. 579.

These simple principles are restated here, not because the court deems such restatement necessary to remove doubts as to their correctness, but simply to lay the proper foundation for some remarks of an explanatory character as to certain other expressions used in other cases which it has been thought by some members of this court might perhaps be interpreted as changing or modifying the principles stated. Reference is here made to a number of cases in which, in discussing the question of the dignity and weight to which the ruling of the trial court before or after verdict upon such a question is entitled, the term "reasonable doubt" or something equivalent thereto is used. Thus, in *Lam Yee v. State,* 132 Wis. 527, 112 N. W. 425, it was said concerning the decision of the trial court refusing to set aside a verdict of guilty, that it could not be overruled unless it is "not only wrong but clearly so, reasonable doubts in respect thereto being resolved in favor of such decision." In *Szczepanski v. C. & N. W. R. Co.* 147 Wis. 180, 132 N. W. 989, it was said concerning the decisions of the trial court on motions to direct a verdict and for judgment after verdict, "they must be wrong and so clearly that way as to leave no reasonable controversy in respect thereto" in order to be reversed here. In *Barlow v. Foster,* 149 Wis. 613, 136 N. W. 822, it is said the verdict of a jury approved by the trial court "is due to prevail unless it appears so radically wrong as to have no reasonable probabilities in its favor after giving legitimate effect to the presumption in its favor and the makeweights reasonably presumed to have been rightly afforded below which do not appear, and could not be made to appear of record." In *Koepp v. Nat. E. & S. Co.* 151 Wis. 302, 139 N. W. 179, it is said of the ruling of the trial court submitting the case to the jury, "such a decision must prevail here unless manifestly wrong. Reasonable

doubts in respect thereto must be resolved in favor of the trial jurisdiction." And in *Sloan v. C., M. & St. P. R. Co.* 151 Wis. 645, 139 N. W. 529, it is said, speaking of the decision of the trial court setting aside a verdict for the plaintiff and granting judgment for the defendant on the evidence, that the decision "is entitled to such weight on appeal as not to be legitimately disturbable without a manifest showing of its being wrong. . . . All reasonable doubts arising from the record itself, and those arising from appreciably contemplating the peculiarly advantageous position of the trial judge, must be overcome in such a case as this in order to successfully challenge the initial decision."

In regard to these latter expressions and any others of similar nature which may exist in our recent reports, it has been the thought of the writer and some of his brethren that they might easily and perhaps naturally be construed as extending and making more drastic the simple principles first stated in this discussion, because of the use of such expressions as "reasonable controversy," "reasonable probabilities," and "reasonable doubts." These terms—especially the latter—have acquired a very well defined and certain meaning in the criminal law, and it seems probable that when used in this connection they would naturally be thought to carry the same meaning, and thus require this court to be in the same condition of mind in order to reverse such a ruling that a jury is required to be when it convicts a man of crime.

It may be stated authoritatively that there has been no such thought here, and no such principle has been acted on. It was thought by these expressions to make clear and prominent the simple rule first enunciated in the *Powell Case,* 98 Wis. 35, 73 N. W. 573, and not to extend it. Elaboration of definition does not always produce clarity of expression, and it may not have done so in this case. It is enough for our present purpose to state that the various expressions last quoted and any similar expressions which may be found are

not to be considered as in any way changing the attitude of this court towards the decisions of the trial court of the nature herein referred to. When satisfied that such a decision is clearly wrong, we shall feel that it is our duty to so pronounce it; when not so satisfied, we shall feel that it is our duty to affirm it. The writer expresses his own personal doubt whether anything in the way of clearness is to be gained by any attempt to state the principle in a different way or enlarge upon it.

*By the Court.*—Judgment reversed, and action remanded for a new trial.