PARO, Administratrix, Appellant, vs. CARTER, Respondent.

*March 16—May 9, 1922.*

*Physicians: Malpractice: Leaving gauze in incision: Reliance on nurses' count of packs used: Evidence: Relevancy: Sufficiency: Directed verdict.*

1. The duty of a surgeon to exercise due care to ascertain that no foreign substance is left in the abdomen of one operated on is not conclusively shown to have been performed by evidence that he followed the usual practice and custom among skilled practitioners of relying on a count by the nurses of the packs and articles used.
2. In an action of malpractice against a physician for failing to remove gauzes or sponges used in an operation upon plaintiff's abdomen, it is *held* that plaintiff failed to prove by credible evidence that foreign substances found in the body of a patient in May, 1919, were left there by defendant when he operated in March, 1918.
3. Where a motion for a directed verdict was not decided but leave was granted to renew the motion after verdict, and the

jury were unable to agree, a directed verdict after the jury was discharged will be disturbed only when the conclusion of the trial judge was clearly wrong.

4. Though plaintiff's counsel stated, on asking a witness whether, immediately after a subsequent operation by another physician on the patient, she picked up a piece of gauze, that he would connect it up with gauze that came from the patient, but no proof showing such connection was offered, rejection of the testimony was not error.

5. The only issue in the case being whether the defendant left a piece of gauze in the abdomen of the patient, testimony as to the proper mode of drainage subsequent to the operation is irrelevant.

APPEAL from a judgment of the circuit court for Brown county: HENRY GRAASS, Circuit Judge. *Affirmed.*

Action for malpractice, commenced by Ethel Paro, alleging damage of $15,000, which by amendment at the trial was increased to $30,000. Plaintiff died a few weeks after the trial and the action was revived in the name of the administratrix.

The complaint alleged, in substance, that plaintiff, being in need of medical care, consulted defendant and was advised that she was suffering from adhesions resulting from several operations performed upon her by defendant some time before; that it was necessary to perform another operation upon her; that plaintiff thereupon engaged defendant to perform the operation; that the operation was performed on the 19th day of March, 1918; that the said defendant in performing the operation "failed to use due and proper care and skill, in that he carelessly and negligently failed to remove certain gauze packing and bandages which he had used in connection with the operation and allowed the same to remain in plaintiff's abdomen;" that as a result of such negligence the plaintiff became sick and suffered a paralysis which totally and permanently incapacitated her and made her a helpless invalid.

The answer denied all allegations of negligence; that any gauze or packing was left in plaintiff's abdomen; and that

the present condition of plaintiff was due to any such cause. Further answering, defendant "alleges that the plaintiff is an hysteric, and was an hysteric prior to the time of the operation, and that her paralysis is an hysterical paralysis, for which the defendant is blameless."

It appeared that on October 27, 1913, when plaintiff was seventeen years old, defendant performed an operation upon her for appendicitis; that on December 27, 1913, defendant opened the wound in an effort to discover why it did not heal properly; that soon after, plaintiff went to the hospital and remained there five weeks; and that the wound did not heal properly until several months later. In the summer of 1917 plaintiff was troubled with a pain in her foot, and, after consulting defendant twice, went to a foot specialist, who treated it, the pain leaving some weeks later. On September 24, 1917, plaintiff suffered a fainting spell while employed in a millinery store, and was absent from work some days. In January, 1918, plaintiff consulted Dr. Minahan, complaining of severe pains in her abdomen. On March 14, 1918, plaintiff consulted defendant, complaining of the same pains. Defendant performed the operation in question on March 19, 1918. Plaintiff was discharged from the hospital about April 3, 1918. Between this date and July 29th plaintiff frequently received treatment at the hands of defendant and at the hospital according to his orders, the treatments being necessitated because of the opening of a small sinus at the upper angle of the wound. On July 27th defendant lanced the incision, using a local anæsthetic, and on the 29th dressed the wound for the last time.

During the next several months plaintiff consulted and was treated by several different doctors. In the early part of May, 1919, plaintiff's mother removed two small pieces of gauze from the wound. On May 7th Dr. Kelly, using a local anæsthetic, made an incision near the wound, and in the latter part of the month two small pieces of gauze were removed by his assistant. In the latter part of the same

year Dr. Minahan performed an operation and removed another piece of gauze and a piece of a "thick, pasty material about one and one-half inches to two inches long." It appears that shortly after this operation the wound healed properly.

Defendant testified that the operation was performed in the usual manner; that all gauze used was counted before it was placed for use on the operating table, and that after it had been used the pieces were again counted, in order to insure that none was left in the wound. He further testified:

"Gauze Exhibit 'A' is known as sponge. And Gauze Exhibit 'D' is known as pack. Exhibit 'A,' previous to sterilization, is done up in packages of twelve. Sponge 'D' in packages of six. I saw the nurses count the packages before we operated on Ethel Paro. The packages were correct."

Concerning the conduct of the operation he testified:

"After having released the necessary adhesions, pack D was removed and a general survey taken. . . I felt inside to be certain nothing was left in there. I did that because it is the proper thing to do. It would be surgical crime to leave anything in there. It is safeguarded by the nurses in counting the packs, but I did that as additional safeguard. It is a custom by which the nurses count and check up the sponges put in and taken out. I do not rely altogether on that custom, but I do partially. One nurse counts the sponges as they are handed over to me and another nurse counts them as they are taken out. As they are taken out they are put into a basin, and when we are through the packs in the basin are counted. They have absorbed blood and pus and things of that kind and are thrown into the basin in that condition. And when I want to know whether or not they are all out, I call upon the nurse to count the packs in the basin after first assuring myself that I haven't left any. The only purpose in having them counted is to be certain that none were left."

Testimony to the same effect was given by nurses present at the operation. There was testimony of other nurses to

the effect that gauze like that exhibited by plaintiff was not in use at the hospital at the time in question. Testimony of plaintiff's witnesses tended to show that gauze such as was in use would, because of being a long time in a wound, resemble that produced by plaintiff.

There was conflicting testimony as to whether much of the treatment for the disorders of plaintiff previously mentioned was not necessitated by her mental rather than her physical condition. There was testimony that the condition of the wound could have been caused by the presence of some foreign substance, such as a piece of gauze, inside.

Defendant's counsel moved for a directed verdict. The trial court submitted a special verdict to the jury on the issues whether defendant left gauze in plaintiff's body; whether defendant exercised the proper care and skill required; whether a failure to do so was the cause of plaintiff's injury; and whether the hysterical paralysis was caused by the leaving of gauze in her body. The jury was unable to agree on a verdict and was discharged. The court then directed a verdict in favor of defendant.

For the appellant there was a brief by *Martin, Martin & Martin* of Green Bay, and oral argument by *P. H. Martin.*

For the respondent there was a brief signed by *Victor I. Minahan* of Green Bay, and oral argument by *Mr. Minahan.*

JONES, J. Although the testimony in this case was quite voluminous, the only issue was whether on the 19th day of March, 1918, the defendant negligently failed to use due care and skill by failing to remove gauze packages and bandages which he had used in the operation. There is no claim of any negligence in the former operation of December, 1913, or in subsequent treatment prior to March, 1918.

Under the pleadings and ruling of the court there is no issue before us as to negligence subsequent to March, 1918. It is conceded by both parties that there was no gauze in

the abdominal wall prior to the operation in question.    It seems reasonably clear that no surgeon or physician left any such gauze in the body of Miss Paro between March, 1918, and May, 1919, when it was first discovered.

It is claimed by plaintiff's counsel that the evidence shows that the gauze could not have entered through any other agency than the defendant.    We have been somewhat surprised at the number of cases which have reached the courts of last resort where negligence of the same character in such operations has been claimed.    In many of these cases defendants have been held liable for damages.    In some of them the testimony was clear that the substance had been left in the body of the patient by the surgeon or some assistant; in others the defendant relied principally upon some custom or system of counting the gauzes or sponges by nurses; in others that the foreign substance could not have entered the body of the patient except through the agency of the defendant.    In the present case defendant's counsel claimed that there was no evidence to uphold a finding that defendant left any gauze or sponges in the abdomen of the patient and claim that the testimony affirmatively and clearly shows this fact.    Except in the respect above indicated there is no claim of negligence, and it would serve no useful purpose to detail the methods by which the surgical operation was conducted.    It suffices to state that the evidence shows that it was carried on in the most approved method, unless the evidence establishes that the gauze was not removed as claimed.    The defendant called to his assistance another practitioner of long experience and he had the aid of trained nurses of the hospital.

The defense did not rely merely on a system or custom as to the mode of counting the sponges, but two of the nurses and the defendant testified from their recollection that an accurate count was made of them and that those left after the operation corresponded to the number used.    The testimony convinces us that the kind of gauze taken from the

patient's body was not used at the hospital at the time of the operation. On this subject considerable testimony was given, and that of the nurses was positive and uncontradicted.

There is a singular feature of this case which distinguishes it from those relied on by appellant's counsel. The testimony is undisputed that Miss Paro was an hysteric and this was conceded by her counsel. This fact explains many of the unusual circumstances marking the history of her case during a period of five years. Defendant called as witnesses well known specialists from medical colleges. One of them, Dr. Moyer, said:

"My conclusion was that she was suffering from hysteria. She had a partial paralysis of her left leg and left arm, which was an hysterical condition and not a true paralysis, but an inability to move her arm and elbow only to a limited extent voluntarily. . . . Hysterical paralysis is not a disease in the ordinary use of the term. It is a disorder of conduct; essentially a mental condition in which the mind controls the body, due to an action of the will and found only in people of defective personality. . . . I have been in court during the testimony thus far and am familiar with the testimony of the operation and the failure of her abdomen to heal. That condition could not have been a cause of hysterical paralysis. No physical causes ever cause hysteria. It is a mental process pure and simple. . . . If this young woman got an emotion, or desire so it would be better for her not to be paralyzed, she certainly would recover."

Several physicians testified, without contradiction, from their own experience that it is a recognized fact that hysterical persons will and do manipulate their wounds and interfere with their recovery, and there was testimony which was not rebutted that such persons sometimes place substances in their own wounds. For a considerable period after the operation in question there were daily dressings of the wound by the patient's mother, and gauze obtained from the drug stores was used for that purpose. Dr. Minahan testified that when he performed the operation in December, 1919, he

"removed a piece of gauze and a thick, pasty material about one and one-half to two inches long.    It lay in the bottom of the connection between those two holes, right in the muscle of the abdominal wall.    I did not go into the peritoneal cavity."

This gauze was incased in a thick, pasty material.    The only explanation of this condition which is suggested is that Miss Paro had been advised by some person called a doctor, but not one in fact, to rub a salve on her abdomen and that it would loosen the adhesions, and that she had tried the experiment.

The smallest pieces of gauze used in the operation were thirty-six by eighteen inches, while the five pieces taken from the body of Miss Paro were small and very tough and could not easily have been broken off or detached.    There was other positive testimony, which it does not seem necessary to recite, tending to show the extreme improbability of the claim that the material found in the body of the patient in May, 1919, was left there by defendant in March, 1918.

It is argued by counsel for respondent that, even if the sponge was left in the patient's abdomen by defendant, he is not liable in damages if he followed the requirements of approved practice in his profession in his community, and if he followed the usual custom as to the count.    We are not disposed to accept this view.    Although testimony of the usual practice and custom among skilled practitioners is competent and may have an important bearing, it is not conclusive in such a case as this that there has been no negligence.    From the time the operation begins until it is closed and all foreign substances are removed due care and skill should be exercised by the surgeon.    *Walker v. Holbrook*, 130 Minn. 106, 153 N. W. 305; *Palmer v. Humiston*, 87 Ohio St. 401, 101 N. E. 283; *Akridge v. Noble*, 114 Ga. 949, 41 S. E. 78; *Davis v. Kerr*, 239 Pa. St. 351, 86 Atl. 1007.

But in the case before us the defense does not rest on

proof that defendant followed the most approved practice in ascertaining whether all gauze or sponges had been removed, and we are forced to the conclusion that plaintiff failed to prove by credible evidence the fact vital to her success.

At the close of the trial, on a motion for a directed verdict for the defendant, the court expressed the view that the motion was well taken, but concluded to take the verdict of the jury without prejudice 'to renew the motion. When the jury disagreed the motion was granted. It is the well settled rule under such circumstances that due weight should be given to the decision of the trial court, and that when "the trial judge rules, either on motion for nonsuit, motion for a directed verdict, or motion to set aside the verdict, that there is or is not sufficient evidence upon a given question to take the case to the jury, the trial court has such superior advantages for judging of the weight of the testimony and its relevancy and effect that this court should not disturb the decision merely because, on a doubtful balancing of probabilities, the mind inclines slightly against the decision, but only when the mind is clearly convinced that the conclusion of the trial judge is wrong." *Slam v. Lake Superior T. & T. R. Co.* 152 Wis. 426, 432, 140 N. W. 30; *Powell v. Ashland I. & S. Co.* 98 Wis. 35, 73 N. W. 573; *Jeffers v. G. B. & W. R. Co.* 148 Wis. 315, 134 N. W. 900; *Rogers v. Brown,* 143 Wis. 472, 128 N. W. 64. It is our conclusion that on the merits the decision of the trial court should not be disturbed.

An exception was taken to rulings of the court as to certain questions of evidence. A witness was asked whether she picked up a piece of gauze immediately after the operation by Dr. Minahan, and it was stated by plaintiff's counsel that he would connect it up with gauze that came from plaintiff, but no proof showing such connection was offered. The rejection of the testimony was not error.

Another exception was taken to the rejection of testi-

mony, offered by plaintiff on cross-examination of an expert, as to the proper mode of drainage subsequent to the operation. This was irrelevant to the only issue in the case, namely, whether the gauze had been removed, and was properly rejected.

*By the Court.*—Judgment affirmed.