HANSON, Appellant, vs. CHIPPEWA VALLEY & NORTHERN RAILWAY COMPANY and another, Respondents.

*March 16—June 4, 1912.*

*Trial: Special verdict: Changing finding: Railroads: Injury to person walking on track: Contributory negligence: Failure to look and listen.*

1. Where the trial court has submitted in a special verdict a question which, upon the undisputed evidence, can properly be answered in but one way, it should change a contrary finding by the jury.
2. Where an employee in a mill yard, familiar with the whole situation and with the operation of engines on a railroad which served the mill, without any particular reason for so doing walked upon the railroad track in going from his work to his boarding house, although other and perfectly safe routes were just as convenient, and neither when entering upon the track nor while walking thereon looked or listened for an approaching engine, he was, as a matter of law, guilty of contributory negligence precluding a recovery for an injury caused by his being struck by an engine.

APPEAL from a judgment of the circuit court for Rusk county: JAMES WICKHAM, Circuit Judge. *Affirmed.*

Action for personal injury.

February 26, 1909, plaintiff was an employee of defendant.

lumber company, in and about its sawmill and lumber yard
at or near Atlanta, Wisconsin. Defendant, railroad company,
was a duly organized railway corporation, its stockholders
being the proprietors of the lumber company and its business
with little exception, being supplementary to the sawmill
manufacturing and logging business of such company. There
was some eighteen miles of road, including the switch tracks.
There were two engines in use, which frequently were op-
erated on the main line and the switch track. One of the
engines was liable to pass over the main line or a switch track
most any time during working hours. Customarily each was
operated by a full crew, but, sometimes, by only the fireman.
The latter was the case, as to both engines, on the occasion in
question. The business was carried on at that time as it cus-
tomarily had been for two or three years or more. The main
track ran north from Bruce and, at the mill property, along
the east side of a small stream and mill pond west of the mill.
A short distance below the dam there was a bridge extending
west across a small stream. Further west a few rods there
was another small stream. Both were supplied with water
from above the dam and united a short distance below, form-
ing an island. There was a wagon road from the northeast
crossing the planing-mill track about twenty-four rods from
the bridge and describing a curve till the direction became
southwest thereto, then the direction was west across the
bridge, the island, and a second bridge and on to the mill
boarding house. Near the east end of the bridge the plan-
ing-mill track and main line united. From there the for-
mer ran northeast, crossing the wagon road as before indi-
cated, then on several rods to the southerly side of the planing
mill. About thirty-five feet north of the junction, afore-
said, a switch track diverged from the main line some eight
or ten feet and then ran parallel with it for some little dis-
tance, such switch track being used for unloading logs and
turning them into the mill pond. At a point north of the lat-

ter switch, forty or fifty feet, more or less, the main-line track and the log track were the distance apart before indicated. At such point the main-line track and the planing-mill track were some thirty feet apart. The mill was north of such point six or eight rods, the southwest corner being near the the main track and southeast corner a short distance from the planing-mill track. On the east side of the main track, some ten rods north of the junction aforesaid and six rods or so north of the log-track switch, there was a pump house and water tank. Plaintiff worked in the yard north-northeast of the planing mill. There was a road by which employees could go therefrom to the boarding house. Sometimes they went by way of the road and sometimes partly thereon, then down the planing-mill track or alongside of it to the bridge, or partly on or along such track and partly down the main track, according to their pleasure. No objection was made, prior to the accident, by either defendant to the men taking the course on or along the tracks in going from their working places to the boarding house. The custom had been as indicated for two years or more. Plaintiff and the officers of both defendants were familiar therewith. The former had worked for the lumber company so long that he was familiar with all the operations in or about or in connection with his duties, including the particular movements of the engines which occurred just prior to the injury. He was a person of full age, of average intelligence, and in full possession of his faculties. The main track from the planing mill to the pump house was on a slight down grade, while from the switch northeast on the planing-mill track there was a slight up grade. About 12 o'clock noon, as the signal for the midday meal was given, plaintiff and his associates started for the boarding house. He traveled on the road a short distance and then cut across a distance of several rods to the south and entered upon the planing-mill track. About that time one of the engines which had been run to the pump house for water

went back therefrom to the planing-mill switch and in on the planing-mill track. Plaintiff and others, as they traveled southwest, saw it coming toward them and. stepped off the track on the westerly side at a point 100 feet, more or less, from the switch, and then went toward the main track which .was some thirty-five feet further west. They might have gone east about three times that distance and reached the road, or traveled between the tracks of the main line and those of the planing-mill line a short distance till the engine passed by, or waited for it to do so, or gone around it if it was standing still, or taken any other of several courses, avoiding the way down the main track. Instead of doing so they crossed to such track, entered thereon, and then turned towards the bridge purposing to travel between the rails. At this time steam and smoke were escaping from the engine on the planing-mill track, and perhaps from the second engine as well, which was approaching from the south. The latter had been run down the planing-mill track to a clearance at the junction so that as soon as the first engine was in on the planing-mill track it could be backed north on the main track to the water tank. As plaintiff started south on such track the engine came backing up, drifting quite slowly, and not working steam. That was the condition as plaintiff testified, and, further, that the way before him was so obscured by smoke and steam that he could not have observed such an object as the engine backing toward him though not more than a few feet away; that there was no signal of its approach; that the back end of the tender suddenly came into view but a step or so away; and that he instantly attempted to escape from the danger but failed to do so. The engine struck and severely injured him. A companion who was a few feet behind him was also struck, either by the engine or by him as he was knocked or caused to suddenly jump back.

The following is, substantially, plaintiff's evidence in detail: I started southwest on the road leading from the yard

where I was at work to go to the boarding house. After
traveling a few rods I turned to the left and proceeded down
the planing-mill track. There was no particular reason for
doing so though I had customarily gone that way. I could
just as well have kept the road. After proceeding some dis-
tance I saw an engine coming toward me. I turned to the
left to avoid it and crossed to and entered upon the main
track. I knew there were two engines around there. I knew
it was necessary to be careful. When I entered upon the
main track I did not look for an engine. The steam and
smoke down the track was very thick but I could see the track.
When I stepped on it I was looking straight ahead. I saw
the engine just before it reached me. When I was approach-
ing the main track and stepping upon it I did not look for an
engine or listen for one. I was thinking of my dinner. I
thought if there was an engine it might be standing still.
There was nothing to obstruct my view but the steam and
smoke. I did not hear the engine on the main track puffing
out steam. There was other evidence tending to show that
persons not as well circumstanced as plaintiff for seeing the
engine observed it some little time before the accident.

There was an issue formed by the pleadings as to whether
the railroad company violated the fence law and whether the
failure to fence contributed to produce the injury, and there
was evidence in respect thereto.

The jury found all issues for the plaintiff except those in
respect to failure to fence, but the court, on motion, changed
the answers of the special verdict on the subject of contribu-
tory negligence of plaintiff to findings in favor of the defend-
ant. A motion for judgment on the verdict, as rendered, was
denied, and a motion for judgment in defendant's favor on
the corrected verdict was granted.

For the appellant there was a brief by *Ekern & Eggum,*
and oral argument by *H. L. Ekern.*

For the respondents there was a brief by *Goggins &
Brazeau,* and oral argument by *T. W. Brazeau.*

The following opinion was filed April 3, 1912:

MARSHALL, J. The foregoing statement leaves but little, if anything, which need be said in deciding this case.

Appellant having testified that he neither looked nor listened for an approaching engine or car when entering and walking upon the railway track, and been corroborated by all physical and other circumstances affecting the case, how could the trial court have well done otherwise than change the answer of the jury which was directly contrary thereto? It is rather unexplainable that the question was submitted to the jury at all. Such submission furnishes about the only explanation there is why the jury answered as they did. They regarded the attitude of the court, and rightfully so, as considerately indicating that the evidence might probably warrant a finding either way. It was the duty of the court, otherwise, to withdraw the matter from the jury. The result seems to have moved the judicial mind to a more careful consideration of the matter and the conclusion being reached that there was no substantial basis in the evidence for the answer of the jury to rest upon, with which we agree.

In view of the admitted fact that appellant proceeded in the face of danger up to the instant of the accident without thought for his personal safety, and under circumstances, which have been held over and over again, should have efficiently aroused such thought, we cannot well say the trial court was wrong in holding, as matter of law, that he was guilty of contributory negligence.

True, there are some circumstances shown by the evidence which might fairly be regarded as differentiating the case from the ordinary one of a licensee being injured while walking upon a railroad track without using his faculties for seeing and hearing to avoid colliding with moving cars; but they are outweighed by other circumstances, particularly the presence of smoke and steam preventing efficient performance of the duty to look out for danger and the entire absence of ex-

cuse for taking the particular way of reaching the boarding house when there were other ways, just as convenient and perfectly safe. On the whole, no good reason is perceived why the decision of the trial court should be disturbed. If the matter were even involved in fair doubt, that deference which is due to the trial jurisdiction would require the doubt to be resolved in favor of affirming the judgment.

*By the Court.*—Judgment is affirmed.

TIMLIN, J., took no part.

A motion for a rehearing was denied June 4, 1912.