ELMERGREEN, Appellant, vs. KERN, Respondent.    [Two appeals.]

*January 11—February 8, 1921.*
*April 7—September 23, 1921.*

*Appeal: Time when appeal lies: Perfection of judgment: Insertion of costs: Compromise and settlement: Forbearance to sue as consideration: Requisites: Trial: Judgment notwithstanding verdict.*

*First appeal:*

1. Though sec. 2861, Stats., provides that the clerk of the trial court, upon receiving a verdict, enter a judgment in conformity therewith, such judgment is not perfected so as to be appealable until costs, which constitute a part of the judgment, are ascertained and included therein or the time limited for their insertion has expired, notwithstanding sec. 3039 limits the time in which an appeal may be taken to one year from the date of entry of the judgment, and provides that such year shall begin to run immediately from the entry of the judgment, regardless of the time when the costs are taxed and inserted.

*Second appeal:*

2. In order that the settlement of a claim constitute a valid consideration for a compromise or a promise, the claim need not be one which could be successful if prosecuted, but it must not be made in bad faith or be frivolous or vexatious.

3. The decision of the trial court that the evidence is insufficient to take the case to the jury or that a verdict of a jury should be set aside, should be disturbed only where clearly wrong.

4. Where the evidence is insufficient to support a special verdict of the jury and its sufficiency is challenged by all the usual motions before and after verdict, judgment may be entered notwithstanding the verdict and without the court changing the answers found by the jury.

APPEALS from a judgment of the circuit court for Milwaukee county: BYRON B. PARK, Judge. *First appeal dismissed; judgment affirmed on second appeal.*

On January 11, 1921, the respondent moved to dismiss appellant's first appeal.

*Irving A. Fish* of Milwaukee in support of the motion.

*Contra, Horace B. Walmsley* of Milwaukee.

On February 8, 1921, the motion to dismiss was granted, and the following opinion was filed February 15, 1921:

PER CURIAM. The respondent moves to dismiss the first appeal taken in this action because it was taken before the costs were taxed and inserted in the judgment. "Costs constitute a part of the judgment, and I do not think it can be deemed perfected until they are ascertained and included." *Cord v. Southwell,* 15 Wis. 211; *Fowler v. Metzger S. & O. Co.* 131 Wis. 633, 111 N. W. 677.

A judgment is not perfected so as to be appealable unless the costs are ascertained and inserted, or until the time limited by statute for so perfecting the judgment has expired. *Joint School Dist. v. Brighton,* 68 Wis. 246, 32 N. W. 42; *Hoye v. C. & N. W. R. Co.* 65 Wis. 243, 27 N. W. 309, 310; *Smith v. Hart,* 44 Wis. 230; *Wheeler v. Russell,* 93 Wis. 135, 67 N. W. 43.

It is declared in the *Wheeler Case:*

"The taxation of costs at common law related to the date of the judgment, which was the time of the record of the judicial decision in the record book of the proceedings of the court, and the date of that entry was the date of the judgment."

Sec. 2861, Stats., regulates this practice by providing that, unless a different direction be given by the court, the clerk upon recording a verdict must enter judgment in conformity with it. Such judgment so entered is not an appealable one, as above indicated, until perfected by the insertion of the costs by the prevailing party or until the time limit for inserting them has expired. The claim that ch. 400, Laws 1913, amending sec. 3039, Stats., operated to change the established rule that no appeal may be taken from a judgment before costs are inserted or forfeited by limitation of time, is not well founded. The language of the amendment clearly

indicates that no other change was attempted to be effected than to change from *two* years to *one* year the time within which a writ of error may be issued or an appeal taken, and that such year shall begin to run immediately from the entry of a judgment regardless of the time when costs are taxed and inserted. The terms of the amendment clearly do not affect the question that a judgment is not appealable until perfected by the insertion of the costs of action.

It follows that the first appeal was prematurely taken and must be dismissed.

### Second appeal.

Action for damages for breach of contract to transfer stock in a mining company, in consideration of which it is alleged plaintiff agreed not to prosecute a cause of action. Trial before a jury resulted in a special verdict in favor of plaintiff. Judgment was given for defendant notwithstanding the verdict. Plaintiff appeals.

The complaint in substance alleges that in 1904 plaintiff and defendant were interested in the Michigan Ore Company, a Utah corporation; that through frauds of its officers the mining claims belonging to the company were transferred to the Ophir Tunnel Company, another corporation, without consideration, and that defendant took stock in the latter company and acquiesced in the transfers; that afterward defendant and others organized the Cliff Mining Company, which purchased the shares of the Michigan Ore Company. The complaint further alleged:

"That the plaintiff set about certain proceedings and preparation to secure his rights, and instituted litigation in the courts of the state of Utah, and the plaintiff was about to cause proceedings to be commenced to set aside said transfers to the Cliff Mining Company, and informed the defendant of his intention. That the defendant being then largely interested in the said Cliff Mining Company, and desirous that no action be commenced that would affect the value of his investment therein, proposed to the plaintiff

in June, 1906, that in consideration that the plaintiff would refrain from bringing further action against the said Cliff Mining Company and the defendant, and in consideration that the plaintiff would turn over to the defendant for his inspection and temporary use certain documents, letters, memoranda, etc., which defendant desired to use to obtain certain information then valuable to the defendant in certain litigation with one John B. Weimer, that he, the said defendant, would secure for and cause to be transferred to the plaintiff an amount of stock in the said Cliff Mining Company equivalent in value to the plaintiff's rightful interest in the said land, claims, rights, and properties which the plaintiff had and was entitled to therein by virtue of his holdings of the stock of the Michigan Ore Company.

"That thereupon the plaintiff accepted the said proposition of the defendant and turned over to the defendant the said certain documents, letters, memoranda, etc., as requested by the defendant, and the plaintiff refrained from bringing further action against the Cliff Mining Company and the defendant concerning the transfer of said claims, lands, rights, and properties."

The answer denies many of the allegations of the complaint and specifically denies the alleged agreement between the parties.

In 1903 the plaintiff and defendant, who were related by marriage, both resided in Milwaukee and were solicited by their cousin John Weimer to become investors in mining stocks. In 1904 they both became interested in the Michigan Ore Company, a company supposed to own certain mining claims in Utah, and both acquired their interests from Weimer. The respondent had 25,000 shares of the nominal par value of $1 each. The appellant owned 50,000 shares for himself and as trustee, but owing to difficulties between him and Weimer they were never transferred on the books of the company. An agreement had been made between appellant and Weimer by which the appellant was given a one-tenth interest in certain mining claims which Weimer then had under bond. This agreement provided that Weimer

might transfer the claims to a stock company or incorpora-
tion, acting on his own judgment without consulting the
appellant, and that appellant should take one tenth of the
stock of the company to which the claims were transferred,
less the treasury stock, for his one-tenth interest in the
claims. The appellant, therefore, from the record appears
to have had a demand against Weimer in the first instance
for one tenth of the stock of the Michigan Ore Company,
less the treasury stock. Weimer declined to recognize ap-
pellant's right to this one-tenth of the Michigan Ore Com-
pany's stock, claiming that appellant had been repaid the
money he had originally advanced at the time the agreement
was executed, but finally satisfied that demand of the appel-
lant by giving the appellant 50,000 shares of stock in the
Michigan Ore Company, that being the company to which
he had transferred the claims.

In October, 1904, another company, the Ophir Tunnel
Company, was organized, and subsequently stock in this
company was exchanged for stock in the Michigan Ore
Company share for share, but the shares in the Ophir Tunnel
Company so exchanged were obtained not from the latter
company but from Weimer. Although Weimer exchanged
Ophir Tunnel Company stock for Michigan Ore Company
stock with other stockholders, he refused to exchange with
appellant for the reason, as he claimed, that he had been
paid back all the money he had put in. Weimer testified:
"I didn't give the plaintiff, *Elmergreen,* any Ophir Tunnel
Company stock, because he didn't have any of his eggs in
our basket. He had nothing coming, he had no money in
the deal, not a five-cent piece."

When appellant asked to have his stock transferred on the
books of the Michigan Ore Company the request was
refused, and he brought suit in 1905 against both the com-
panies, Weimer, and others, not including respondent. In
this action plaintiff claimed that many frauds had been

committed by Weimer and others connected with the two companies and that the property of the Michigan Ore Company had been fraudulently and illegally transferred to the Ophir Tunnel Company and asserted his right to stock in the latter company. This action was finally tried and a decree rendered wholly adverse to appellant on or about October 6, 1908. In the year 1906 the Cliff Mining Company was organized. It was not organized to take over the property of the Ophir Tunnel Company, but subsequently acquired it, exchanging stock on the basis of eighteen and two-tenths shares of the latter for one of the Cliff Company. The respondent became actively interested in the Cliff Company and became one of its officers. It was one of the main contentions of the appellant that he agreed not to press the litigation pending in Utah and would turn over and did turn over to respondent all of appellant's papers relating to the litigation, and that this was part of the consideration for respondent's promise.

The following question was submitted to the jury:

"(1) Was there an agreement between the plaintiff and the defendant that, if the plaintiff would not press his Utah suit then pending, would refrain from bringing further action or actions, and would turn over to the defendant for his inspection and use all his papers relating to said Utah suit and mining claims in Utah, the defendant in consideration therefor would transfer to the plaintiff an amount of stock in the Cliff Mining Company equivalent in value to his rightful interest as represented by his 50,000 shares of the Michigan Ore Company?"

To this the jury answered Yes. In answer to the second question it was found that appellant performed his part of the agreement, and in answer to the third the damages were assessed at the sum of $27,472.52. At the close of the testimony respondent moved for a directed verdict. This motion was denied and the case was allowed to proceed to a verdict with the understanding that the motion would be

renewed after verdict. After the verdict respondent moved that the answers to the first and second questions be changed and the answer as to damages be changed to a nominal sum and for an order for judgment notwithstanding the verdict, also for an order vacating and setting aside the verdict and for judgment on the uncontradicted evidence.

The court did not consider that the second and third answers were sustained by the evidence, but allowed the verdict to stand and granted respondent's motion for judgment notwithstanding the verdict.

For the appellant there were briefs by *Joseph G. Hirschberg* and *Horace B. Walmsley,* both of Milwaukee, and oral argument by *Mr. Walmsley.*

*Alfred Kay,* attorney, and *Irving A. Fish,* of counsel, both of Milwaukee, for the respondent.

The following opinion was filed May 3, 1921:

JONES, J.    The labor involved in considering the appeal in this intricate and complicated case has been greatly increased by the very unusual manner in which it is presented to us. The record consists of about 990 pages. The oral testimony consists of about 600 typewritten pages. The remainder of the record is made up of pleadings, letters, corporate and other records, and miscellaneous exhibits. In the thirty-three pages of the printed case there can be of course only the most meager and inadequate abridgment of the evidence, and in order to arrive at a conclusion we have been compelled to go through the voluminous record with but little aid from the printed case. Both briefs, however, contain the careful and full decision of the trial court, which throws much light upon the mass of testimony.

The action has been pending for ten years or more. On the appeal of the defendant from a judgment in a former trial the judgment was reversed on the ground that the judgment in the Utah case above referred to was not allowed

to be received in evidence.    167 Wis. 560, 168 N. W. 407.
In the opinion Mr. Justice ROSENBERRY said:

"It appears from the record in this case that a very large
part of the consideration for the contract which plaintiff
claims the defendant here entered into was the withdrawal
of the Utah suit.   It also appears from the record that the
information which plaintiff had, and which he agreed to
turn over in part performance of his contract with the de-
fendant, related to the so-called California claim and could
not have been of very substantial value for the reason that
the defendant or his company was thereafter obliged to
pay $20,000 in settlement of claims based upon the adverse
ownership of the California claim.   If the record in the
Utah suit had been received and the whole case were before
us, a very serious question as to the right of the plaintiff to
recover any damages other than for the value of the memo-
randa furnished in reference to the California claim would
be presented.   Had the record in the Utah action been re-
ceived, the plaintiff might have offered further proof: so
that the record as it stands is incomplete.   The whole matter
not having been presented, it cannot now be determined."

In the last trial the judgment was received in evidence,
and in the finding and decree, among other things, it was
determined that the defendants, including Weimer, were
not personally liable to the plaintiff upon any of the matters
set forth in the complaint in that action; that at the time
of the organization of the Michigan Ore Company the
mining claims owned by it were not worth more than $2,500;
that the company was indebted for that amount, and that the
company at regular meetings of its officers sold the same to
the Ophir Tunnel Company for $2,500 in good faith in
order to pay debts for labor, and that said sale was necessary
and regular in all respects and was ratified by the stock-
holders; that on the 18th day of October, 1904, plaintiff
was the owner in his own right and as trustee for others of
50,000 shares of the Michigan Ore Company, but the same
did not stand in his name and he neglected to surrender the

certificate so the same could be transferred in his name, and that he did not pay anything of value for the stock.

It is now the law of the case that the Utah judgment was properly received in evidence, and appellant's counsel make no claim that as against him it is not conclusive so far as it relates to the interest he asserted in the corporations named in the decree and in the mining claims acquired by them. In other words, it is a verity that the appellant had no interest in either the Ophir Tunnel Company or the Cliff Mining Company, and no valid claim against either of them, and we agree with the trial judge that the evidence discloses that at the time of the alleged agreement the appellant had no valid cause of action against the respondent or the Cliff Company.

The claim that one of the valid grounds for the promise alleged to have been made by respondent was that appellant was threatening to sue the Cliff Company seems largely negatived by the fact that this company was not then in existence and was not organized until months after the promise is said to have been made. The documents described in the complaint which were delivered to the respondent at the time of the alleged agreement were returned on request and it does not appear that they were of any value or service to the respondent.

The documentary evidence demonstrates that appellant did not delay his suit in Utah, but on the contrary pressed it to defeat. It seems unnecessary to discuss in detail the evidence contained in the voluminous record, but after careful examination we are satisfied that the following statements by the trial judge in his decision are fully justified:

"There are in the record many and sometimes startling 'contradictions' in the testimony of the plaintiff disclosed by his testimony on this trial, the first trial, and his letters to divers people."

"There is also considerable shifting of ground and position on his part on divers propositions, including that of the

Elmergreen v. Kern, 174 Wis. 622.

alleged contract between himself and the defendant, on which this action is based."

It is true the appellant testified on the last trial that the promise set up in the complaint was made and respondent emphatically denied it. They were the only witnesses to the transaction. But the contradictions in the appellant's testimony, the inconsistent positions he has assumed before and since the litigation commenced, and the relations of the parties to each other and to the companies involved were such as to justify the conclusion of the trial court that it was incredible that respondent made the agreement alleged. The decision of the trial court contains this statement:

"A careful consideration of all the evidence, including a great mass of exhibits, consisting of correspondence, documents, records, abstracts, etc., leads to the conclusion that no consideration whatever passed to the defendant for the agreement or promise which plaintiff alleges defendant made with him."

Appellant argues that "forbearance to prosecute any cause of action is a sufficient consideration to support any contract." The early English decisions held that the forbearance or promise to forbear to prosecute an unfounded claim was not a sufficient consideration, and there have been many decisions in this country holding to that rule. But that is not the rule which now generally prevails nor is it the law in this state. In order to form a valid consideration for a compromise or promise the claim need not be one which could be successful if prosecuted. In *Kercheval v. Doty,* 31 Wis. 476, where there was a compromise of a pending suit, Mr. Chief Justice Dixon thus declared the rule:

"To close the doors of dispute, therefore, and preclude all future investigation into the merits of the claims settled, these things only are requisite: that the claims should have been in some doubt and their validity controverted; that they should have been asserted in good faith; and that there should have been no fraud, undue advantage, or mistake

in the settlement." Page 485. See, also, *Zimmer v. Becker,* 66 Wis. 527, 29 N. W. 228; *Hewett v. Currier,* 63 Wis. 386, 23 N. W. 884.

Forbearance to sue is not a good consideration if the claim is made. in bad faith or is frivolous or vexatious. 1 Page, Contracts (2d ed.) sec. 617. "If the claim is known by the claimant to have no foundation, it is clear that the forbearance to prosecute the claim is not valid consideration." Williston, Contracts, § 135 and cases cited.

Like thousands of others who have dealings in mining stocks about which they have no personal knowledge, appellant had been disappointed. He may have had a just grievance against Weimer, although the Utah court found he had none; but we can find in the long record no shadow of excuse for the belief on the part of the appellant that in December, 1905, the date of the alleged promise, he had any cause of action against the respondent or the Cliff Company, which was not then in existence. We agree with the trial judge that there was no consideration for the alleged promise.

In view of the conclusion we have reached it is unnecessary to discuss the question of damages.

It is ably and earnestly argued by appellant's counsel that the findings of the jury as to the contract between the parties was conclusive and that judgment for the appellant should have followed upon the verdict. We are by no means unmindful of the force of this argument or the weight to be given to the answers of juries in special verdicts. In this case there was a very great amount of documentary evidence not easy of comprehension by a jury, and yet necessary to be considered in reaching a conclusion as to the credibility of the two main witnesses. There were such contradictions between the written evidence and the oral testimony of appellant and such inherent impossibilities in his testimony that the trial court might justly come to the conclusion that

his evidence as to the alleged contract was not credible.  The decision of the trial judge evinces that he had given careful attention to the complicated facts of the case.  Our duty under such circumstances was well expressed by Mr. Chief Justice WINSLOW as follows:

"It is considered that these cases and perhaps others containing like language were all intended to express and do in fact express the same general idea, namely, that when the trial judge rules, either on motion for nonsuit, motion for a directed verdict, or motion to set aside the verdict, that there is or is not sufficient evidence upon a given question to take the case to the jury, the trial court has such superior advantages for judging of the weight of the testimony and its relevancy and effect that this court should not disturb the decision merely because, on a doubtful balancing of probabilities, the mind inclines slightly against the decision, but only when the mind is clearly convinced that the conclusion of the trial judge is wrong.  It is also considered that this is an entirely reasonable and salutary principle; a principle upon which the court has acted in the past and expects to act in the future; a principle which gives due weight and dignity to the decision of the trial judge and demands of him his best and most conscientious service whenever such a question is presented." *Slam v. Lake Superior T. & T. R. Co.* 152 Wis. 426, 432, 140 N. W. 30. See, also, *Powell v. Ashland I. & S. Co.* 98 Wis. 35, 73 N. W. 573; *Jeffers v. G. B. & W. R. Co.* 148 Wis. 315, 134 N. W. 900; *Rogers v. Brown,* 143 Wis. 472, 128 N. W. 64; *Riger v. C. & N. W. R. Co.* 156 Wis. 86, 144 N. W. 204; *Meyst v. Frederickson,* 146 Wis. 85, 130 N. W. 960; *Kroger v. Cumberland F. P. Co.* 145 Wis. 433, 130 N. W. 513; *Hanson v. C. V. & N. R. Co.* 150 Wis. 104, 135 N. W. 488.

Appellant's counsel argue that since the trial court did not change the answers in the special verdict the appellant was entitled to judgment for the sum assessed as damages. As appears from the statement of facts, the respondent made all the usual motions both before and after the verdict by

which the sufficiency of the evidence could be challenged. The court held, following the practice approved in *Muench v. Heinemann*, 119 Wis. 441, 96 N. W. 800, that although answers in the special verdict had not been changed, judgment could be entered for respondent notwithstanding the verdict. See, also, *Hay v. Baraboo*, 127 Wis. 1, 105 N. W. 654. On this point appellant's counsel rely on the case of *Maxon v. Gates,* 136 Wis. 270, 116 N. W. 758. But there the requisite motions were not made and the decision seems to be based on that ground. We hold that the objection is not well taken.

*By the Court.*—Judgment affirmed.

ESCHWEILER, J., dissents.

A motion for a rehearing was denied, with $10 costs, on September 23, 1921.