RYAN, Appellant, vs. MILWAUKEE NORTHERN RAILWAY COMPANY, Respondent.

*March 10—April 7, 1925.*

*Street railways: Collision of trailer with standing truck: Negligence: Evidence: Sufficiency.*

1. In an action against a street railway company for damages occasioned when a street-car trailer forced a truck against plaintiff's parked automobile, evidence as to the motorman's negligence is *held* insufficient to warrant submission to the jury.  p. 543.
2. A ruling of the trial court upon the question whether there is sufficient evidence on a given question to take the case to the jury will be disturbed only when this court is clearly convinced that the conclusion of the trial judge is wrong.  p. 543.

APPEAL from an order and a judgment of the circuit court for Milwaukee county: E. T. FAIRCHILD, Circuit Judge. *Affirmed.*

For the appellant there was a brief by *Dale C. Shockley,* attorney, and *Glenn R. Dougherty,* of counsel, both of Milwaukee, and oral argument by *Mr. Shockley.*

For the respondent there was a brief by *Bottum, Hudnall, Lecher & McNamara* of Milwaukee, and oral argument by *F. L. McNamara.*

JONES, J. The plaintiff in this case is the owner of a Ford coupé which was demolished when a trailer on one of the street cars of the defendant company in the city of Milwaukee caught upon a truck and forced the truck through the coupé, which was parked along the side of the street.

The defendant's street car with a trailer attached was moving north on Third street and stopped at the intersection of Third and Sycamore streets while the east-and-west-bound traffic was moving. Upon the signal from the traffic officer the motorman proceeded to make a turn to the left for the purpose of proceeding westward upon Sycamore street. The truck in question, which belonged to the Wilson Express Company, had stopped alongside of the street car, also waiting for the signal from the traffic officer, and upon receiving it started to make the same turn as the street car, but stopped before completing the turn to allow a belated west-bound automobile to proceed on Sycamore street. After starting the truck again the driver perceived that the coupé of the plaintiff was parked on the north side of Sycamore street about thirty-five or forty feet from the cross-walk and that just beyond the coupé was an ice wagon, and that there was not room enough for the truck to pass while the street car and the trailer were passing these obstructions, so the truck was stopped when headed west on Sycamore street and the street car proceeded. The street car passed

the truck without accident, but the corner of the trailer caught on the rear corner of the truck and dragged it along, crushing the coupé of the plaintiff and striking the ice wagon, which was stationed just beyond the coupé, before the motorman stopped the street car.

The motorman testified that he did not notice the truck; that he did not hear the collision nor the shouts of people in the truck or on the street; that his attention was concentrated on the question of whether he could pass the ice wagon; that as soon as he received the emergency signal from the conductor he at once applied the brakes and brought the car to a stop within six or eight feet. The conductor testified that he was just putting his book away when he heard the shouting, and on turning around saw the trailer had caught upon the truck; that he at once gave the emergency signal and stepped out on the platform; that when he stepped upon the platform the truck had already crashed into the coupé, and before the street car stopped the truck struck the ice wagon; that the trailer had begun to straighten out into Sycamore street before the accident occurred. The driver of the truck testified that when he perceived that he could not pass the coupé and ice wagon he stopped and that at that time the motorman was looking at him; that when the trailer caught the truck he sounded the exhaust whistle and shouted, as did also two others with him in the truck, and that a party on the street also started shouting to the motorman; that his front wheels had not crossed the crosswalk on Sycamore when the trailer caught the truck. The judge directed a verdict for the defendant, and from this verdict this appeal is brought.

The negligence charged in the complaint was that the motorman failed to maintain a proper lookout to avoid collision; that the car was not equipped with proper brakes and stopping appliances, or that if it was so equipped they were not used as required; that the bell was not sounded as a

warning to the drivers of vehicles and other users of the highway and that the street car was driven at a reckless and excessive rate of speed. There is no evidence that the brakes and appliances for stopping the street car were insufficient or that there was an excessive speed. In the brief of the appellant the argument is almost wholly based on the claim that the motorman was negligent. He is charged with negligence for failing to hear the whistle on the truck or the shouting of the men referred to above or the crash that took place. He is also charged with negligence for failing to see the west-bound automobile which passed in front of him and for failing to see the truck in question. It is difficult to see that there is any significance in the fact that the motorman failed to notice, or, if he did notice, failed to remember that he saw another passing car which in no way obstructed the track or affected the management of the street car. The only testimony that there was any warning or shouting before-the collision was that of the truck driver, who was fifty feet behind the motorman at the time of the collision. After the collision there was shouting by several others. At the time, according to all the testimony, the motorman was guiding his car and the trailer at a moderate rate of speed with no obstructions in view, although he was intent upon observing several automobiles parked upon his right and the ice wagon and horses standing along the north side of the street. There was evidence that the horses were restless, and the evidence is undisputed that the attention of the motorman was concentrated on the situation in front of him. It is also undisputed that as the street car and trailer were rounding the curve they made considerable noise and that building operations were going on at a hotel near by.

The motorman testified that he heard no yelling and felt no jar. In a city like Milwaukee it is probable that such noises as shouting on the streets and the whistling of automobiles is not uncommon. Of course a motorman's first

duty is to use care in avoiding injury to his passengers and to those who are in the line of travel, but that line of travel is iron-clad. He cannot turn to the right or left like the drivers of other vehicles or pedestrians to avoid collisions. He has the double duty of using care to avoid injury to others and of making reasonable speed to accommodate the public. It is true, collisions may happen at the rear of a passing street car, but from the nature of the thing such collisions seldom occur, and if they do they are quite apt to be the result of the negligence of some third person. It would seem a harsh rule to require a motorman to anticipate any such collision in the absence of any known danger. In this case the truck seemed out of the zone of danger when the motorman and the first car passed it. There seemed no reason to expect that the truck driver would assume such a position that a collision would occur. The truck driver was clearly negligent in so managing his truck that the collision occurred. There was such a space between the north rail of the track and the curb of Sycamore street that if the truck driver had passed to the right of the intersection, as the law requires, the collision would not have happened. Since it was necessary for the motorman to keep close watch forward, we do not consider that he was also required to look constantly to the rear to avoid such a collision as occurred. The law does not impose any such responsibility. *Kuhn v. Milwaukee E. R. & L. Co.* 158 Wis. 525, 149 N. W. 220; *Garvey v. Rhode Island Co.* 26 R. I. 80, 58 Atl. 456; *Louisville R. Co. v. Ray* (Ky.) 124 S. W. 313; *West Chicago St. R. Co. v. Binder,* 51 Ill. App. 420; *Bulger v. Albany Ry.* 42 N. Y. 459. Nor do we think that he was bound to stop the car under the circumstances, even if he heard the noises concerning which testimony was given. If any emergency was likely to happen at the rear of his car it was natural that he should expect to be warned by the conductor and the emergency bell.

Nevertheless there might be liability on the part of the defendant even if there were no negligence up to the time of the collision and even though the truck driver was negligent. We have here no question of contributory negligence. The plaintiff's car was where he had a right to leave it, and if the negligence of the defendant proximately caused loss to the plaintiff he is entitled to recover. The plaintiff's counsel vigorously argue that the motorman failed to observe the danger and hear the warnings already referred to and consequently failed to stop the street car within a reasonable time. The truck driver swore that the rear end of the Ford coupé was from thirty to thirty-five feet from the crosswalk and that his truck was carried from thirty-five to forty feet. There was considerable uncertainty in the testimony as to the location of the truck when the collision took place. Appellant's counsel argued that at that time the front wheels of the truck were about on a line with the west crosswalk of Third street, but the testimony does not support that claim. He said, "I stopped with my front wheels practically on the west walk." Other witnesses located the truck some distance further west. Reviewing all this testimony, counsel for the defendant argue that at the time of the collision between the truck and the trailer the front of the truck was within eight to fifteen feet of the Ford coupé. It would be unprofitable to analyze all the testimony on this subject. It suffices to say that we do not find credible evidence to sustain the claim that the collision occurred at the place claimed by the plaintiff's counsel.

There is not the dispute which is usual in collision cases as to the rate of speed. The lowest estimate of the speed of the street car was six and the highest ten miles an hour. There is testimony that as the street car rounded the curve it speeded up a little. The testimony is undisputed that as soon as the conductor had notice of the collision he gave the emergency signal and that the motorman on receiving the

signal stopped the street car as soon as he could. Various movements on the part of the conductor and motorman were necessary before the street car could be stopped. Those acts required some interval of time. If the street car was going at the rate of eight miles an hour, only a very few seconds could have elapsed after the collision before the car was stopped, even on the assumption that the truck driver was correct in his estimate of the location of the truck and the distance it was dragged. The trial court saw the witnesses and heard the testimony and concluded that there was not sufficient evidence to go to the jury. We concur in his decision.

"When the trial judge rules, either on motion for nonsuit, motion for a directed verdict, or motion to set aside the verdict, that there is or is not sufficient evidence upon a given question to take the case to the jury, the trial court has such superior advantages for judging of the weight of the testimony and its relevancy and effect that this court should not disturb the decision merely because, on a doubtful balancing of probabilities, the mind inclines slightly against the decision, but only when the mind is clearly convinced that the conclusion of the trial judge is wrong." *Slam v. Lake Superior T. & T. R. Co.* 152 Wis. 426, 140 N. W. 30; *Elmergreen v. Kern,* 174 Wis. 622, 182 N. W. 947.

*By the Court.*—Judgment affirmed.